267 A.2d 693.

WALTER C. CHURCH *vs.* FRANCIS E. DOHERTY, *Director of Labor.*

JULY 23, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J.   This is an employee's petition for the payment of benefits for total disability from the second injury indemnity fund in accordance with the provisions of G. L. 1956 (1968 Reenactment) §28-37-8.   The trial commissioner heard the petition and ordered the payment of benefits.   The respondent director has prosecuted an appeal to this court from a decree of a majority of the Workmen's Compensation Commission affirming the decree of a trial commissioner awarding the payment of such benefits.

The facts are undisputed.   On November 3, 1955, while working for a building contractor, petitioner fell from a staging.   As the result of his fall, employee suffered serious injuries including a fractured spine and a paralysis of the lower extremities.   The employee has been totally incapacitated ever since the time of this unfortunate incident. On November 15, 1955,  he  entered into  a preliminary agreement  with  his  employer's  insurance  carrier  whereby

he received compensation payments of $32 a week. The insurance company paid this sum of money to employee each and every week until May 19, 1969. At that time employee was notified in writing by the carrier that the payments were to cease forthwith as employee had received the maximum amount of compensation due him under the Workmen's Compensation Act. The next day, May 20, 1969, employee made a demand upon respondent as custodian of the second injury indemnity fund for a continuance of benefits from the fund.

It was at this point that it was discovered that someone in the insurance carrier's organization had "goofed." The maximum amount of money due petitioner under the Compensation Act was $16,000. The employee received his first weekly benefit check on November 4, 1955. There is no agreement as to the time when the statutory maximum was paid to petitioner. The director says it was sometime in June 1965. The dissenting member of the Compensation Commission found that the maximum was reached in June 1967. The majority of the Commission made no explicit finding in this regard but assumed that more than two years had elapsed between the time the insurer had paid petitioner the $16,000 and the day he sought payments from the second injury fund. We shall accept the Commission's assumption. Although there is no unanimity as to the exact time when the benefits paid petitioner reached the ceiling set by the statute, it is clear that the insurer continued to send petitioner a weekly compensation check until May 19, 1969. The petitioner cashed each check sent to him. There is no doubt that the statutory maximum had been reached sometime before May 1969. The director concedes that the carrier never indicated to the injured workman that the checks he was receiving were for anything other than the weekly benefits due him for his work-related injury.

Notwithstanding employee's complete innocence in the matter, the director has taken the position that employee's petition for second injury fund benefits is barred by the statute of limitations. The director argues that the worker had to file the instant petition within two years after he had been paid the statutory maximum. We disagree.

Any petition for benefits from the second injury indemnity fund is, by the provisions of §28-37-6 (1968 Reenactment) subject to the provisions set forth in chap. 35 of title 28. This chapter details procedures for the filing of a petition for the usual workmen's compensation benefits. In essence, §28-35-57 (1968 Reenactment) provides that a claim for compensation shall be barred unless it is filed within two years after the occurrence or manifestation of an "injury." Although the language of this section is not really appropriate to a claim for payment from the second injury indemnity fund, we have held that no second injury fund benefits would be paid unless the employee files his claim within two years after he ceases to receive the weekly payments of compensation given him by his employer. *Koshgarian* v. *Hawksley*, 90 R. I. 293, 157 A.2d 663; *De-Costa* v. *Devine*, 90 R. I. 240, 157 A.2d 247.

There can be no doubt as to the purposes of the legislation which established the scheme of workmen's compensation. Time after time, this court has said that the primary purpose of the statutory enactments concerning compensation for job-connected injuries was to provide some degree of economic help to an injured worker because of a loss of earnings. In an effort to implement this legislative goal, we have repeatedly held that such legislation shall be construed liberally. If we were to adopt the director's view as to how the statute of limitations should be construed in the instant cause, we would frustrate the benevolent purposes which prompted the adoption of the

Workmen's Compensation Act and the subsequent establishment of the second injury indemnity fund.[1]

In *Ricci* v. *Hall*, 101 R. I. 677, 226 A.2d 692, we said that the obvious purpose of §28-37-8 (1968 Reenactment) was to extend the time for the payment of compensation benefits for total incapacity where the incapacity extends beyond the maximum period set forth in the Act. The fund was to be responsible for weekly compensation and medical benefits due an injured employee once the employer's liability therefor had ended. *Cabral* v. *Hall*, 102 R. I. 320, 230 A.2d 250.

It is obvious that in order for an injured employee to petition for second injury fund benefits under §28-37-8 two conditions must be satisfied: the employee must be suffering a total loss of his earning capacity, and he must have exhausted the benefits due him under the Workmen's Compensation Act. That these benefits be exhausted is a condition precedent to his right to secure these benefits is readily evident from a reading of this pertinent part of the statute:

> "* * * payments from the fund shall be made for the continuance of compensation and medical expenses * * * to any employee who * * * has suffered an injury resulting in his receiving compensation payments for total incapacity and such incapacity has continued or will continue beyond the maximum period of payment

---

[1]The second injury indemnity fund was established by the legislature in 1943 when it enacted P. L. 1943, chap. 1363. The fund is composed of contributions made to it by various insurers and self-insurers in accordance with an assessment formula found in §28-37-13 (1968 Reenactment). The insurer pays two per cent of the gross premiums it receives on workmen's compensation insurance or employer's liability insurance written or renewed by it during the preceding calendar year on risks within Rhode Island. The self-insurer pays two per cent of the premium he would have had to pay to obtain the workmen's compensation insurance or the employer's liability insurance during the preceding year. In addition, each insurer or self-insurer must pay into the fund $750 for every injury causing death in which there is no liability for compensation.

for total incapacity provided under [the Workmen's Compensation Act]."

The language of the statute presupposes the termination of benefits from the employer before recourse can be had to the second injury indemnity fund. In other words, the employee cannot receive second injury indemnity fund benefits unless and until he has stopped receiving the benefits due him from what is usually his employer's insurance carrier.

Here employee was receiving his regular weekly checks from his employer's insurance carrier up until May 19, 1969. If he had applied to the second injury indemnity fund for the continuance of benefits under §28-37-8 in June 1965, or June 1967, or April 1969, he would have been turned down for the reason that the insurance carrier had not ceased to discontinue payments to petitioner. There is no obligation on the part of the Director of Labor to make any payment to a totally disabled worker until it has been shown that the employee is no longer receiving benefits from his employer. It follows, therefore, that the right to claim second injury fund benefits accrued to petitioner on May 19, 1969. In our opinion, it is not until this condition arose that the statute of limitations began to run as to the filing of a petition for benefits under §28-37-8.

It is reasonable to assume that in most circumstances an insurance carrier, particularly in these days of computerization, will stop paying the injured employee once he has received the maximum amount allowed by law. Here, of course, we are faced with the unusual situation where the carrier overpaid the employee and did not terminate payments until some time after the maximum benefits allowable under the Act had been paid.

We are unable to perceive why the statute of limitations should not have commenced May 19, 1969, the date the payments were actually terminated, and we reject the di-

rector's view of the statute as being inimicable to the attainment of the humanitarian objectives of the Act. See *Cabral* v. *Hall, supra.* Adherence to respondent's view would deny petitioner, a totally incapacitated employee, the opportunity to receive continued compensation and medical benefits, not because of an inability to demonstrate a need for these benefits or any fault on his part, but solely because, as was suggested in oral argument, someone in the insurer's employ "pushed the wrong button" on the computer.

We are cognizant that the second injury funds are in the nature of trust moneys which should not be depleted without good cause. However, when one realizes that if the carrier had not erred in prolonging the payments to the petitioner, the disbursement of benefits from the second injury indemnity fund would have commenced sometime prior to 1969. It is thus difficult to perceive in light of the fund's objectives how our decision will cause an unjustifiable depletion thereof, for in the circumstances before us, it is readily apparent that the fund indirectly benefited from the carrier's mistake.

The respondent's appeal is denied and dismissed; the decree appealed from is affirmed; and the cause is remanded to the Workmen's Compensation Commission for further proceedings.

*Roy Ross,* for petitioner.

*Herbert F. DeSimone,* Attorney General, *G. John Gazerro,* Special Assistant Attorney General, *Robert Hogan,* for respondent.