286 A.2d 253.

ELIE AUCLAIR *vs.* AMERICAN SILK SPINNING COMPANY.

JANUARY 19, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This is an employee's appeal from a decree of the full Workmen's Compensation Commission affirming the decree of the trial commissioner denying and dismissing his petition for specific benefits.

On May 12, 1964, the employee injured his left shoulder while in the employ of the respondent employer. On June 26, 1964, the parties entered into a preliminary agreement which described the nature and location of the injury as a "tear of rotator cuff left shoulder." The employee was out of work and received compensation and medical benefits under the preliminary agreement until September 14, 1964, when he returned to his regular work with respondent.

The employee's testimony is in substance as follows. Subsequent to returning to work, he continued on the same job until September of 1969. His shoulder had been bothering him and he had been complaining since the injury in 1964, although he was not incapacitated for work. In September of 1969, he was on a ladder and while grab-

bing hold of the spoke of the ladder with his left hand he found out that his arm would not hold him.

On March 11, 1970, the employee filed a petition for specific benefits for the permanent partial loss of use of his left arm. General Laws 1956 (1968 Reenactment) §28-33-19. On May 28, 1970, a hearing was held on that petition. Doctor G. Edward Crane, the employee's orthopedic surgeon, was called as a witness. The doctor's testimony is in substance that when he first examined the employee on March 27, 1970, the employee was complaining of pain in his left shoulder and difficulty in using his left arm. He found that the employee had a permanent disability to his shoulder; that the restriction of motion to employee's left shoulder was a permanent restriction as of that date; and that the residual permanent disability of the left upper extremity amounted to an 11 per cent permanent disability of the upper extremity as a whole. The specific injury was, in his opinion, caused by the May 12, 1964 injury. He based his opinion on the March 27, 1970 examination and on the history he received from the employee.

During cross-examination Dr. Crane was asked to give his opinion as to the length of time that the employee had suffered the 11 per cent loss of motion. He replied that he could not answer that question. However, during further cross-examination, he replied that a condition such as that sustained by the employee reached a plateau in not less than one year and not more than 18 months subsequent to the original injury.[1]

---

[1] At pages 10, 11 and 12 of the transcript the following questions and answers appear:

"29 Q Based on his history, what's your opinion, if you can give us one, during this time he had pain and no power in his left shoulder and arm and continued to work; that's between '64 and '69; based on his history to you, what would be your opinion as to when he reached this end result of 11 percent?

On the basis of Dr. Crane's testimony the trial commissioner found that

> " * * * the condition in the employee's left arm became permanent on or about January 1, 1966, and that the employee's right of action for specific benefits arose at that time."

He concluded that the employee failed to prove that he had filed his petition for specific compensation within two years from January 1, 1966, as required by §28-35-57.[2]

The employee admits that a petitioner who files an original petition has the burden of proving that he has filed the same within the statutory period. *Larkin* v.

---

A I can't answer that.

"30 Q Would you say it went back before last September 1, for example, '69?

A I would say, roughly, roughly, under the circumstances, that he would reach the maximum amount of improvement in a period of a year, to a year and half, after the original injury.

* * *

"39 Q Is there anything in the history or your examination that indicates his condition might not have become final as of late '65 or '66, and that after those dates it reached a point where it became final? Anything in the history?

A Nothing in the history that indicates that, no."

[2]Section 28-35-57 reads as follows:

' "Limitation of claims for compensation.—An employee's claim for compensation under chapters 29 to 38, inclusive, of this title shall be barred unless an agreement or a petition, as provided in this chapter, shall be filed within two (2) years after the occurrence or manifestation of the injury or incapacity, or in case of the death of the employee, or, in the event of his physical or mental incapacity, within two (2) years after the death of the employee or the removal of such physical or mental incapacity.

"The time for filing claims shall not begin to run in cases of latent or undiscovered physical or mental impairment due to injury including disease until (1) the person claiming benefits knew, or by exercise of reasonable diligence should have known, of the existence of such impairment and its causal relationship to his employment or (2) after disablement, whichever is later, provided, that in any such case in which indemnity benefits have been paid, the claimant's right to compensation is preserved without time limitation."

*George A. Fuller Co.,* 76 R. I. 395, 71 A.2d 690 (1950); *Rosa* v. *George A. Fuller Co.,* 74 R. I. 215, 60 A.2d 150 (1948). He argues that he has sustained that burden.

The employee contends that the commission misconceived Dr. Crane's testimony and erroneously found that his injury reached an end result on January 1, 1966. He argues further that his injury was of such a nature that its lasting effect was not easily ascertainable and though the injury continued to plague him from the date of the original incident, he could not ascertain the degree of the loss of use of his arm nor could he ascertain that his injury had reached an end result outside of the two-year statute of limitations. The employee cites the following statement in *Brown & Root, Inc.* v. *Dunkelberger,* 196 Okla. 116, 162 P.2d 1018 (1945), which this court quoted with approval in *Rosa* v. *George A. Fuller Co., supra,* at 221, 60 A.2d at 154:

> "* * * 'where the injury is of such a nature that its lasting effect is not easily ascertained, and it seems trifling, but later develops, or is found to be of a permanent nature,' the statute 'does not begin to run until the disability is disclosed and becomes apparent.'"

The narrow issue raised by this appeal is whether the employee sustained his burden of proving that he filed this petition within two years of the time he "knew, or by exercise of reasonable diligence should have known, of the existence" of his permanent disability "and its causal relationship to his employment * * *." Section 28-35-57.

As noted above the commission found that the employee failed to sustain his burden. We cannot disturb that finding unless the record is without evidence to support it. *Romano* v. *Collyer Insulated Wire Co.,* 98 R. I. 432, 204 A.2d 298 (1964); *McDonald* v. *John J. Orr & Son, Inc.,* 94 R. I. 428, 181 A.2d 241 (1962). If there is any legal evidence upon which the commission's decree could reasonably be based, its findings are conclusive in the absence of

fraud and cannot be disturbed on appeal here. *Carr Fulflex, Inc.* v. *Borges,* 107 R. I. 648, 270 A.2d 87 (1970). Nor do we weigh the evidence or pass upon the credibility of the witnesses. *Hoard* v. *West Chemical Co.,* 105 R. I. 295, 251 A.2d 533 (1969).

We believe the commission's decree is supported by competent evidence. Doctor Crane's opinion, which was based upon his March 27, 1970 examination, on the history which the employee gave him, and on the nature of the injury itself, is that the employee's condition "* * * would reach the maximum amount of improvement in a period of a year, to a year and a half, after the original injury." This evidence is sufficient to support the commission's finding as to when the employee's condition became permanent.

The employee testified that the shoulder had been bothering him ever since the original injury; that he had been "complaining every year" since then; that the condition had been constant since 1964; and that in 1964 two other doctors had told him his condition would continue indefinitely. We cannot say that the commission was not justified in finding from the employee's own testimony, or, at least, in inferring from such testimony, that the employee knew or "by exercise of reasonable diligence should have known" sometime prior to March 11, 1970, that the condition of his shoulder was permanent. *Compare Rastella* v. *State Dept. of Public Works,* 102 R. I. 123, 229 A.2d 43 (1967).

In so holding we are not unmindful that the Workmen's Compensation Act is a remedial statute which must be construed broadly and liberally in order to effect its purposes. *Rosa* v. *George A. Fuller Co., supra; Condon* v. *First National Stores, Inc.,* 65 R. I. 129, 13 A.2d 684 (1940). However, here there is no need to construe the pertinent statute; it is clear and unambiguous. Our only duty in this case is to apply it as written.

The employee's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the Workmen's Compensation Commission for further proceedings.

*Gunning, LaFazia, Gnys & Selya, Anthony G. Iannuccillo,* for appellant.

*Hinckley, Allen, Salisbury & Parsons, Thomas J. Hogan, James K. Irvin,* for appellee.