397 A.2d 1328.

JOHN F. HEALY *vs.* SALVATORE DESANO, *Director of Labor, et al.*

FEBRUARY 26, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

326

KELLEHER, J.  The director of labor is before us on appeal from a decree of the Workers' Compensation Commission affirming a trial commissioner's grant of benefits from the Second Injury Indemnity Fund to the petitioner, John F. Healy (Healy). The crucial portion of the director's appeal is his contention that the applicable statute of limitations[1]

---

[1] The statute of limitations governing workers' compensation proceedings is G.L. 1956 (1968 Reenactment) §28-35-57. In its pertinent part the statute bars a compensation claim unless an agreement or a petition seeking the same is filed within 2 years after an occurrence or manifestation of the injury or incapacity, and where there is an undisclosed physical or mental impairment, the time of the filing of the claim will not begin to run until such time as the claimant knew or should have known of the existence of the impairment and its causal relationship to his employment, or when he becomes disabled, whichever event comes later.

bars the grant.

The facts are undisputed. In 1949 Healy was employed as a lineman by the New England Power Service Company (New England). On September 14, 1949, Healy fell from a pole. A week later a preliminary agreement was executed whereby New England agreed to pay compensation benefits to Healy as long as he was totally incapacitated. The agreement described Healy's injuries as a fractured right hip and several fractures of the lower back. In 1949 the Workers' Compensation Act, when speaking of the weekly benefits paid to a totally incapacitated worker, provided that

> "in no case shall the period covered by such compensation be greater than 1,000 weeks from the date of the injury nor the amount more than $14,000.00"[2]

Once the agreement was approved by the director of labor on November 7, 1949, Healy began to receive from New England's insurer, Aetna Casualty and Surety Co. (Aetna), the maximum amount of weekly compensation, to wit, $28. In March 1955 the description-of-injury portion of the preliminary agreement was amended so that Healy's injuries were listed as a fractured right hip, fractures of the lower back, and "chronic osteomyelitis of the right hip joint with stiffness of the right hip and knee." In 1958 the weekly compensation came to a halt because Healy had become a schoolteacher and his classroom wages exceeded the $65.62 he was receiving in his 1949 pole-climbing days. The flow of compensation checks resumed in the summer of 1962 when Healy entered the hospital for surgical treatment of his osteomyelitis. When the school bells first tolled in September 1962, Healy was back in the classroom, and the return to his pedagogical pursuits signaled the cessation of the $28 compensation checks. Thirteen years later, in October 1975, Healy's osteomyelitis had deteriorated to the stage at which further hospitalization became necessary. Consequently, on

---

[2]Public Laws 1949, ch. 2269, now G.L. 1956 (1968 Reenactment) §28-33-17. In 1974 the General Assembly, in amending this section, removed the maximum figures both as to time and amount. P.L. 1974, ch. 271.

October 21, 1975, Healy and his surgeon were back in the operating room, and the patient remained in the hospital until the spring of 1976.

The sole witness before the trial commissioner was Dr. A. A. Savastano, an orthopedic surgeon who has been Healy's attending physician since 1962. Doctor Savastano testified that Healy had remained in a partially incapacitated condition from the time he returned to the classroom in September 1962 until he entered the hospital 13 years later in October 1975. The surgeon explained this 13-year period of partial incapacity when he told the trial commissioner that although Healy "was draining from three different areas in his hip," he was still able to do some work during this time. The witness described Healy's 1975 postoperative status as being "totally disabled"[3] and attributed this total disability to the 1949 fall.

Everyone agrees that the 1,000-week post-injury period mentioned in the 1949 statute expired in mid-December 1968. The director goes a step further and takes the position that Healy's petition for second injury fund benefits should have been filed within the ensuing 2-year period. In selecting December 14, 1968 as the triggering time, the director cites a portion of *Church* v. *Doherty*, 107 R.I. 432, 267 A.2d 693 (1970), where we said

> "no second injury fund benefits would be paid unless the employee files his claim within two years after he ceases to receive the weekly payments of compensation given him by his employer." *Id.* at 435, 267 A.2d at 695.

In relying upon this quotation from *Church,* the director apparently overlooks the context in which it appears.

---

[3] Doctor Savastano's use of the term "disabled" reminds us that as a general rule compensation benefits are paid not because of a disability but because the injury has caused a diminution in the worker's earning capacity. The record is clear that Healy's loss of earning capacity at times was total and at other times was partial. *Accioli* v. *Josal Construction Co.*, 112 R.I. 215, 218, 308 A.2d 498, 499 (1973).

In *Church* the insurer's computer apparently went awry because Church continued to receive weekly payments for total incapacity long after the time when the maximum amount of compensation for which the employer was liable ($16,000) had been paid. Once the insurer caught up with its computer, Church's weekly checks stopped. He then filed a petition for second injury fund benefits. The director in *Church*, as the director here, in denying liability, relied upon the statute of limitations. We disagreed with the director and pointed out that the second injury legislation presupposes a termination of benefits before recourse can be had to the fund. Such a claim, we stressed, ordinarily accrues to an employee who is (1) totally incapacitated and (2) has received all the statutory weekly benefits owed him by his employer. In *Church* the director relied upon the fact that the employee had actually been paid the $16,000 maximum set forth in the statutory successor to the 1949 statute which controls the case at bar.

Here, Healy's cash-flow dilemma is not the result of his employer's having paid the statutory maximum of $14,000. The director concedes that the 1949 maximum has never been reached. New England no longer needs to supply the weekly cash because the 1,000-week limitation during which it was obligated to make the weekly payments expired in December 1968. The director's literalistic view of the quotation from *Church* overlooks the fundamental purpose of the existence of the Second Injury Indemnity Fund as well as one of the eligibility factors which a worker must demonstrate before he or she can share in the fruits of the fund.

In *Cabral* v. *Hall*, 102 R.I. 320, 324, 230 A.2d 250, 253 (1967), we noted that the obvious purpose of the second injury fund was to provide a source which would be responsible for the continuance of weekly compensation and medical benefits to a totally incapacitated employee once his employer's liability therefor had terminated either because the amount of benefits prescribed by the act had been paid or the maximum period provided for the payment of the weekly

benefits had elapsed. Before the director could be required to make the fund available to Healy, Healy was required to prove his total incapacity. When the 1,000-week period expired in mid-December 1968, Healy could not have petitioned for second injury benefits[4] because at that time his loss of income was something less than total. Actually, in 1968 Healy's weekly classroom earnings surpassed the weekly wage that was being paid to him in 1949 by New England. As Dr. Savastano's testimony makes clear, the first time that Healy was eligible to seek the director's assistance was in October 1975, when his osteomyelitis had reached the stage at which work was out of the question.

In the final phase of his appeal, the director argues that Aetna should be estopped from claiming reimbursement for benefits paid to Healy and medical payments made in his behalf, both of which occurred prior to the filing of the petition in February 1976. The director asserts that he was never aware of Healy's potential eligibility for second injury benefits, nor was he afforded the opportunity to determine the need and the reasonableness of the medical services incurred by Healy. The record indicates, however, that the only issue that was litigated before the trial commissioner was the applicability of the statute of limitations.

At no time before the trial commissioner did the director ever question the reasonableness or the necessity of the medical expenses incurred prior to the filing of the 1976

---

[4]The Second Injury Indemnity Fund is composed of contributions made to it by various insurers and self-insurers in accordance with an assessment formula found in G.L. 1956 (1968 Reenactment) §28-37-13. The insurer pays 2¾ percent of the gross premiums it receives on workers' compensation insurance or employer's liability insurance written or renewed by it during the preceding calendar year on risks within Rhode Island. The self-insurer pays a similar percentage on the premium it would have had to pay to obtain the worker's compensation insurance or the employer's liability insurance during the preceding year. In addition, each insurer or self-insurer must pay into the fund $750 for every injury causing death for which there is no liability for compensation. In practice, after the statutory maximums to which we have referred in this opinion have been reached, the insurer pays the benefits due the employee and then is reimbursed by the state from the fund.

petition. These expenses amounted to $195, of which the sum of $180 was paid to a group of anesthesiologists who assisted in the 1975 surgery. Consequently, on the record before us, we see no reason whatsoever to disturb the commssion's affirming of the order of reimbursement.

The director's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the Workers' Compensation Commission.

*Rice, Dolan, Kiernan & Kershaw, H. Eliot Rice,* for petitioner.

*Dennis J. Roberts, II,* Attorney General, *Richard B. Woolley,* Special Assistant Attorney General, *Hinckley, Allen, Salisbury & Parsons, Robert W. Lovegreen* (for Aetna Casualty & Surety Company) for respondents.