**Leo RAINVILLE**

v.

**KING'S TRUCKING CO., INC.**

**No. 79–498–Appeal.**

Supreme Court of Rhode Island.

July 20, 1982.

Raul L. Lovett, Lauren E. Jones, Providence, for appellant.

Adler, Pollock & Sheehan Inc., Richard W. MacAdams, Providence, for appellee.

## OPINION

KELLEHER, Justice.

This is an employee's appeal from a decree of the appellate division of the Workers' Compensation Commission vacating a trial commissioner's award of benefits to the employee for the loss of use of his right leg and right arm and for the disfigurement of the leg and arm. Hereafter we shall refer to the employee as "Rainville" and to the employer as "King's."

On May 11, 1970, Rainville, who was then thirty, was working for King's as a driver and furniture mover. He was injured while attempting to move a food freezer down a staircase. When the step upon which Rainville was standing gave way, he fell down the stairs and the freezer came tumbling after him. Rainville sustained serious injuries to his right ankle and right arm. In due course, he underwent surgery during which the ankle was fused through the use of metallic screws. On July 22, 1976, Rainville filed a petition in which he sought specific compensation benefits for loss of use and for disfigurement.

At the hearing before the trial commissioner, there were two witnesses; both were orthopedic surgeons. One surgeon had examined Rainville twice at the request of King's insurance carrier. The other surgeon was Rainville's physician.

The insurer's physician examined Rainville on two occasions, once on June 21, 1974, and again on August 27, 1976. This witness told the trial commissioner that his August 1976 examination disclosed "no significant change" in Rainville's ability to use his right arm and leg or in the appearance of the scarred areas from the time of his first examination of the worker. When asked if he had an opinion in regard to whether an "end result" had been reached as far as the improvement on the loss of use element and the amelioration of the disfigurement element were concerned, the witness responded in the affirmative. He then said that it was his opinion that since no change had occurred between June 1974 and August 1976, the end result had been reached sometime prior to the date of the June 21, 1974 examination. The other surgeon reported that after he had examined Rainville in May 1976, he concluded that the impairment had not yet reached "an end state" and that Rainville's condition was "probably going to get worse."

Since the appellate commission's denial was based on its belief that Rainville's petition was not filed within the two-year period then specified by G.L. 1956 (1968 Reenactment) § 28–35–57,[1] we shall briefly discuss the limitation statute and its relationship to petitioners seeking loss-of-use or disfigurement benefits.

In *Jones v. Grinnell Corp.*, 117 R.I. 44, 47, 362 A.2d 139, 141 (1976), the court noted that although our Workers' Compensation Act affords a wide variety of benefits to the injured worker, there are times when the act uses the word "injury" to describe certain types of incidents which may not result in the loss of earning capacity but do establish the employee's right to weekly benefits for any one of a number of specific losses enumerated in § 28–33–19. Any benefits paid pursuant to § 28–33–19 are considered as "damages" rather than as "compensation." Two of the many benefits listed in this section are for loss of use of "any bodily member or portion thereof"[2] and for "permanent disfigurement about the face, head, neck, hand, arm, or leg."[3]

■ The time for filing a claim for loss of use of a bodily member runs from that date when sound medical opinion determines that an end result has been reached

---

1. At its January 1978 session, the General Assembly extended the limitation period to three years. Public Laws 1978, ch. 232, § 2. Since Rainville's petition was filed in 1976, the two-year period governs.

2. General Laws 1956 (1979 Reenactment) § 28–33–19(m).

3. General Laws 1956 (1979 Reenactment) § 28–33–19(n)(2).

in the treatment phase of care because the functional development of the injured member has reached its maximum potential and nothing further can be done to help the employee. *Tirocchi v. United States Rubber Co.*, 101 R.I. 429, 434, 224 A.2d 387, 391 (1966). In the *Jones* case we were concerned with disfigurement benefits and noted that claims for loss of use and disfigurement involved different concepts since the medical profession, when dealing with loss of use, seeks to increase the patient's use of his damaged limb whereas in disfigurement cases the thrust is to lessen for the patient and others the visual impact of the patient's unsightly appearance. In ordering the payment of benefits for Jones, we also noted the absence of any evidence that Jones's surgeon had indicated that he had reached a "dead end" in the treatment of his patient. *Jones v. Grinnell Corp.*, 117 R.I. at 50–51, 362 A.2d at 142–43.

When dealing with a petition for loss of use and the defense of the limitation statute, this court in *Auclair v. American Silk Spinning Co.*, 109 R.I. 395, 399, 286 A.2d 253, 255 (1972), said that the sole decisive issue to be determined is whether the employee had filed a petition within two years of the time he " 'knew, or by exercise of reasonable diligence should have known, of the existence' " of his permanent disability.

Here, the commission, in denying Rainville's petition, relied exclusively on the two examinations made by the orthopedist selected by the insurer. When it was suggested that the end result might have occurred subsequent to the time of his June 1974 examination, the surgeon indicated that this was not probable in light of the absence of any change in condition between the time of the first and the second examinations. "In my mind," he said, "it [the end result] occurred before the June '74 examination, in between '70 and '74."

However, the crucial issue presented by King's reliance on the statute of limitations is the state of mind, in this instance, of a furniture mover concerning information he had or should have had about the status of his recovery when he filed his July 1976 petition. The absence of any finding relative to whether Rainville, during the two-year period beginning on June 21, 1974, knew or should have known that the medical profession's rehabilitative efforts had reached a plateau where nothing further could be done to improve either his appearance or the use of his injured limbs gives us concern. Fairness to both parties demands that a final disposition of this case must await the resolution of the unresolved but decisive issue by the commission in whose province the General Assembly has placed that duty and responsibility. *Teschner v. Horan*, 118 R.I. 237, 242, 373 A.2d 173, 175 (1977); *D'Andrea v. Manpower, Inc. of Providence*, 105 R.I. 108, 115, 249 A.2d 896, 900 (1969).

The employee's appeal is sustained, and the case is remanded to the Workers' Compensation Commission where the parties may present evidence on the unresolved question. After hearing such evidence, the commission shall enter an appropriate decree.