Salvatore BOTTIGLIERI

v.

Romeo CALDARONE et al.

LeRoy COX

v.

Romeo CALDARONE et al.

Nos. 83–180–Appeal, 83–220–Appeal.

Supreme Court of Rhode Island.

Jan. 24, 1985.

Raul L. Lovett, Marc B. Gursky, Lovett, Morgera, Schefrin, Gallogly, Ltd., Providence, for plaintiff.

Dennis J. Roberts II, Atty. Gen., Richard B. Woolley, Asst. Atty. Gen., Bruce Q. Morin, Quinn Cuzzone & Geremia, Providence, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

These two separate cases have been consolidated on appeal. In each case the employee brought a petition seeking benefits from the Second Injury Indemnity Fund pursuant to G.L.1956 (1979 Reenactment) § 28–37–1.[1] The trial commissioner denied and dismissed the petitions. The Workers' Compensation Commission (hereinafter the

---

1. General Laws 1956 (1979 Reenactment) § 28–37–8 provides:

"Continuance of payments to totally incapacitated persons.—In addition to any other payments authorized to be made from the fund established under § 28–37–1, payments from the fund shall be made for the continuance of compensation and medical expenses at his or her prevailing rate to any employee who subsequent to January 1, 1940 has suffered an injury resulting in his receiving compensation payments for total incapacity and such incapacity has continued or will contin-

ue beyond the maximum period of payment for total incapacity provided under chapters 29 to 38, inclusive, of this title. Such payments for continuing total incapacity shall be made from the fund until the employee's total incapacity has ended or until his death, provided, however, no payment shall be made under this section to an employee whose future payments of compensation have been commuted to a lump sum; and provided, further, that the death of such employee from any cause terminates the right to any further compensation under this section."

commission) affirmed, holding that since neither employee was totally incapacitated, both fell outside the scope of the Second Injury Fund statute. The employees appeal from the decrees of the commission.

### Cox v. Caldarone

On January 14, 1974, employee Leroy Cox injured his back while working for employer Kaiser. Employee's physician, Dr. Joseph Izzi, diagnosed his condition as low-back syndrome, for which Dr. Izzi prescribed traction, exercises and medication. The employee complains of persistent back pain and evidenced limited pain-free range of motion. Doctor Izzi states that employee is totally disabled with regard to his former employment, and should avoid bending, sitting, standing and lifting. Under cross-examination Dr. Izzi acknowledged that employee's condition has remained virtually unchanged and that he could return to selected light work without further deterioration of his condition.

In fact, employee traveled to Arizona at the suggestion of his physician in 1979 and found employment there with a relative working at flea markets. The employee entered into a consent decree in October 1979 that reduced his work-incapacity status from total incapacity to partial incapacity. At the hearing before the commission, the employee presented as an expert witness Maurice Chefitz, Ph.D., an authority on vocational and rehabilitative counseling. Doctor Chefitz testified, over the objections of employer, that due to the physical limitations placed upon employee that he should avoid sitting, standing, lifting and bending, no work exists for him in the marketplace and, therefore, for the purposes of this act he is totally disabled.

At the close of testimony the commissioner summarized the medical evidence, stating that employee could do some light work provided that it did not require heavy lifting or pushing. He rejected application of the odd-lot doctrine [2] to Second Injury Fund cases and concluded that since employee was not totally incapacitated as required by statute, he was not entitled to Second Injury Fund benefits.

### Bottiglieri v. Caldarone

The employee, Salvatore Bottiglieri, suffered an injury that resulted, initially, in total incapacity. The preliminary agreement entered into described employee's injury as "hematoma of the right groin and cellulitis of the right ankle." In 1980 and 1981 employee was examined by his own physician, Dr. L.A. Corvese, who observed that petitioner was experiencing only partial disability arising from his knee injury and that he was capable of ordinary, nonhazardous work at ground level. The employee then had vocational rehabilitation expert Chefitz testify that a person of employee's age, education, language facility and work skills was functionally unemployable; that is, no work is available for this man.

The commissioner summarized the medical evidence and found that employee was only partially incapacitated at the time he had exhausted his statutory benefits. Since partial incapacity failed to satisfy the statutory requirements of the Second Injury Fund, the petition was dismissed.

The sole issue before us is whether partially disabled employees are entitled to benefits from the Second Injury Fund.

The employees in both cases below have introduced testimony by a vocational and rehabilitative expert to buttress their contentions that they are functionally incapacitated, even though their physical conditions do not support a finding of total physical incapacity. The employees, relying on *Soprano Construction Co. v. Maia*, R.I., 431

2. The "odd lot" doctrine as defined in 2 Larson, *The Law of Workmen's Compensation*, § 57.51 at 10–164.22 (1983) states that:

"'[a]n employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.'"

A.2d 1223, 1224 (1981), submit the argument that total incapacity is not simply a medical determination, but must be related to the employment opportunities in the job market for a person with that particular condition.

 We have consistently held that the commission, in considering appeals from the trial commissioner, must examine and weigh the evidence, draw its own conclusions and make its own findings of fact in determining whether the evidence supports the findings of the trial commissioner. *Moretti v. Turin, Inc.,* 112 R.I. 220, 308 A.2d 500 (1973). In each case presently before us, the commission found that the employee did not satisfy the statutory requirements set forth in § 28–37–8 to qualify for benefits.

Pursuant to this standard, the commission examined and weighed the evidence and concluded that the findings made by the trial commissioners must be sustained. In both cases, the commission found that the employees had not satisfied the statutory requirements set forth in § 28–37–8 to qualify for Second Injury Fund benefits.

We do not accept the employees' argument. In *Healy v. DeSano,* 121 R.I. 325, 397 A.2d 1328 (1979), we stated that a claimant must be totally incapacitated as a direct result of a compensable injury and have exhausted all benefits due him before he can become eligible for Second Injury Fund payments. In construing a statute, we must give words their plain and ordinary meaning. *Fiske v. MacGregor, Division of Brunswick,* R.I., 464 A.2d 719, 726 (1983). Section 28–37–8 does not provide for benefit payments upon a showing of partial incapacity and an inability to find gainful employment. Nowhere does this statute provide for the payment of compensation when the employee is partially disabled. Moreover, we find no fault with the factual determinations made by the commissioner, and since the evidence supports such findings, we are bound by them. *Kaiser Aluminum & Chemical Corp. v. Puniello,* R.I., 422 A.2d 746, 747 (1980). Absent a determination of total incapacity based upon medical evidence, the employees have no right to Second Injury Fund benefits.

The employees' appeals are denied and dismissed, the decrees appealed from are affirmed, and the two cases are remanded to the commission with our decision endorsed thereon.