## Ruth SCOTT

v.

## STATE of Rhode Island.

## No. 84–224–Appeal.

Supreme Court of Rhode Island.

April 30, 1986.

Stephen M. Rappoport, Slepkow Slepkow & Rappoport, East Providence, for petitioner.

Arlene Violet, Atty. Gen., Madis Suvari, Sp. Asst. Atty. Gen., for respondent.

## OPINION

KELLEHER, Justice.

This is an employee's appeal[1] from the Workers' Compesnation Appellate Commission of the denial by a trial commissioner of the employee's petition seeking a review of a preliminary agreement that had been entered into by the employee and Zambarano Memorial Hospital as a result of the employee's having slipped on some ice and fallen on her back in the hospital's parking lot. Hereafter we shall refer to the employee, Ruth Scott, by her first name.

The preliminary agreement was executed on June 7, 1979, and called for the weekly payment of approximately $164 during the period of Ruth's total incapacity. The agreement noted that Ruth's injury consisted of "low back pain radiating to both legs." Pursuant to this agreement, compensation was paid Ruth for a period beginning March 2, 1979, to the following July 1, when Ruth returned to work. In her review petition Ruth claims that she became partially incapacitated on July 14, 1979, and remained in that condition until May 31, 1980, when she became totally incapacitated. She also insists that she still remains totally incapacitated. Ruth also sought to

---

1. It should be noted that Ruth's appeal preceded the enactment by the General Assembly at its January 1984 session of P.L.1984, ch. 66, which did away with the automoatic right of appeal to this court and substituted in its stead discretionary review by petition for writ of certiorari.

amend the preliminary agreement because of her belief that it did not set forth the full extent of her injuries, which, according to Ruth, included the areas of the head, neck, and other parts of her body.

At the time of the parking-lot mishap, Ruth's job title was senior nursing attendant. She performed her duties on the adult ward. According to Ruth, after she returned to her job on July 1, 1979, it soon became apparent that she could not perform without experiencing great pain. Consequently, she was transferred to a children's ward where she worked on the evening shift. Her duties and the rates of pay remained the same, but the patients weighed considerably less than the adults had. Although the job responsibilities were the same, Ruth continued to experience pain in her back, leg, and neck. Sometime after transferring to the children's ward, Ruth discussed the possibility of returning to the adult ward because her sleeping habits had been disrupted as the result of working nights. Her supervisors were of the belief that she was not capable of working on the adult ward. Subsequently, Ruth signed a statement that indicated that she could not perform on that unit.

In March 1980 Ruth believed that she couldn't perform on the children's ward and asked the hospital's personnel section to assign her to a position that was less physically demanding. Personnel informed Ruth that her request could not be fulfilled and suggested that she might think in terms of retirement. Ruth submitted her retirement papers in March 1980, which papers bore a retirement date of May 31, 1980. She retired on that date. Subsequently, on December 3, 1980, Ruth filed her petition to review.

Ruth had been treated for the pain by a neurologist and an orthopedic surgeon. Both individuals testified before the trial commissioner. The neurologist believed that Ruth was totally disabled the first time he saw her in March 1979 and remained in the same condition when he saw

her subsequent to her retirement in October 1980. The surgeon, who first examined Ruth in March 1980, treated her twice during that month with injections of muscle relaxants and recommended that she continue to work. After examining Ruth in early April 1980, the surgeon continued to believe that she was responding well to treatment. Again, he advised her to continue working. Neither physician examined Ruth in or around the time of her retirement.

The appellate commission, in affirming the actions of the trial justice, found that the surgeon's testimony supported the conclusion that Ruth was able to perform her duties right up until the time she retired. The commission, in noting that Ruth's compensation remained undiminished during the period in question, also emphasized that compensation benefits are paid for loss of earning capacity, not for the physical injury itself. No one can quarrel with this proposition, for it has been stated on several occasions. *State v. Hurley*, 490 A.2d 979, 982 (R.I.1985); *Whittaker v. Health-Tex, Inc.*, 440 A.2d 122, 123 (R.I.1982); *Healy v. DeSano*, 121 R.I. 325, 328 n. 3, 397 A.2d 1328, 1329 n. 3 (1979). The commission also concluded that the evidence supported the trial justice's finding that Ruth's retirement was voluntary and that she suffered no loss of earning capacity during the period for which she sought additional benefits.

■ Our task in considering appeals regarding the factual findings of a Workers' Compensation Appellate Commission is extremely limited. As we have said on innumerable occasions, if there is any legally competent evidence to support the commission's findings, this court will, in the absence of fraud, affirm those findings. *See Carter v. ITT Royal Electric Division*, 503 A.2d 122, 124 (R.I.1986); *Silva v. James Ursini Co.*, 475 A.2d 205, 207 (R.I.1984); *Coletta v. Leviton Manufacturing Co.*, 437 A.2d 1380, 1383 (R.I.1981). The appellate commission chose to believe Ruth's

surgeon rather than her neurologist, and we cannot fault its choice.

The final phase of Ruth's appeal concerns her attempt to amend the preliminary agreement so that it would correctly identify the injuries she received when she fell. Immediately after the entry on January 26, 1982, of the trial commissioner's decree denying and dismissing Ruth's petition, an appeal was filed on her behalf. Subsequently, on March 2, 1982, a document entitled "Reasons of Appeal to the Appellate Commission" was filed with the commission pursuant to G.L.1956 (1979 Reenactment) § 28-35-28, which in its pertinent portion provides that the appellant shall, within such time as fixed by a commissioner, file Reasons of Appeal specifically stating "all matters determined adversely to him which he desires to appeal, together with so much of the transcript of testimony and rulings as he deems pertinent * * *." The deadline for filing the Reasons of Appeal was March 1, 1982.

Later, on April 14, 1982, a Supplemental Reasons of Appeal was filed relating to the alleged inadequacy of the description of Ruth's injuries. No reason for the tardiness was offered. The appellate commission observed that the Supplemental Reasons of Appeal was filed out of time but rejected its adequacy because it was truly lacking in merit.

■ This court has consistently refused to consider Reasons of Appeal not presented for review to the full commission. *Cousineau v. ITT Royal Electric*, 484 A.2d 884, 886 (R.I.1984); *Da Rosa v. Carol Cable Co.*, 121 R.I. 194, 196–97, 397 A.2d 506, 507 (1979); *Cabral v. Hall*, 102 R.I. 320, 325, 230 A.2d 250, 253–54 (1967). The time limitations set forth in the Workers' Compensation Act are designed to expedite the disposition of claims. We see no difference between a failure to file the Reasons of Appeal before the commission and a tardy submission of an additional reason of appeal that was filed without so much as giving a reason for the out-of-time filing. Consequently, we shall not consider the commission's rejection of Ruth's inadequacy claim.

The employee's appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Workers' Compensation Commission.