Manuel THOMAS

v.

**RHODE ISLAND INSURERS' INSOLVENCY FUND.**

**No. 2001–139–M.P.**

Supreme Court of Rhode Island.

Jan. 22, 2003.

Jack R. DeGiovanni, Jr., Riverside, for Plaintiff.

Howard L. Feldman, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

This case came before the Court on a petition for certiorari filed by the Rhode Island Insurers' Insolvency Fund (Insolvency Fund) asking us to review a decree issued by the Appellate Division of the Workers' Compensation Court (Appellate Division). The Appellate Division decree reversed the trial court's dismissal of Manuel Thomas's [1] (employee or Thomas) petition seeking payment of loss of use and disfigurement benefits pursuant to G.L. 1956 § 28–33–19. In its petition for certio-

rari, the Insolvency Fund argues that the Appellate Division erred by reversing the trial court decree. For the reasons stated below, we deny the petition for certiorari, quash the writ previously issued, and affirm the decree of the Appellate Division.

Before turning to the facts and issues raised by this case, we shall provide pertinent background information.

## I

### Workers' Compensation Benefits

■■■ The purpose of the Workers' Compensation Act (the act) is to adequately compensate injured employees "on the basis of a calculation of their actual wages." *Bailey v. American Stores, Inc./ Star Market,* 610 A.2d 117, 119 (R.I.1992). Compensation benefits are not intended to provide full remuneration for work-related injuries, but instead should "afford a limited amount of economic assistance to cushion the financial shock brought about by the absence of a weekly paycheck." *Id.* (quoting *Peloquin v. ITT Hammel–Dahl,* 110 R.I. 330, 332, 292 A.2d 237, 239 (1972)).

This Court distinguished the various types of workers' compensation benefits in *Rison v. Air Filter Systems, Inc.,* 707 A.2d 675 (R.I.1998). In *Rison,* we stated that:

" 'weekly benefits' (also referred to as 'regular compensation,' 'disability benefits,' or 'indemnity benefits') are awarded pursuant to [G.L.1956] § 28–33–17 as compensation for an employee's lost wages due to his or her work-related incapacity, whereas 'special compensation' or 'specific compensation' is awarded pursuant to § 28–33–19 for an employee's specific, scheduled bodily in-

---

1. Manuel Thomas died on November 25, 2002, twenty seven days after this Court heard oral arguments on this case. Due to his death, Rhode Island Insurers' Insolvency Fund filed a motion to dismiss, which this Court denied on December 20, 2002.

juries, including disfigurement." *Rison,* 707 A.2d at 678.

 At issue in this case is the availability of specific benefits for disfigurement and loss of use. "[A] disfigurement is 'that which impairs or injures the beauty, symmetry or appearance of a person or thing; that which renders unsightly, misshapen or imperfect or deforms in some manner.' " *St. Laurent v. Kaiser Aluminum & Chemical Corp.,* 113 R.I. 10, 13, 316 A.2d 504, 506 (1974) (quoting *Superior Mining Co. v. Industrial Comm'n,* 309 Ill. 339, 141 N.E. 165, 166 (1923)). Loss of use is also compensated by specific benefits and is defined as follows:

> "Where any bodily member or portion of it has been rendered permanently stiff or useless, compensation in accordance with the schedule contained in this section is paid as if the member or portion of the member had been severed completely * * *." Section 28–33–19(a)(2).

However, specific compensation under § 28–33–19 is "considered * *. * 'damages' rather than 'compensation.' " *Rainville v. King's Trucking Co.,* 448 A.2d 733, 734 (R.I.1982).

An employee is also entitled to "medical expenses" under . § 28–33–5, which provides in pertinent part:

> "The employer, subject to the choice of the employee as provided in [G.L.1956] § 28–33–8, promptly provides for an injured employee any reasonable medical, surgical, dental, optical, or other attendance or treatment, nurse and hospital service, medicines, crutches, and apparatus for the period that is necessary, in order to cure, rehabilitate or relieve the employee from the effects of his or her injury * * *."

 Throughout· the history of the act there have been statutory limits on the amount of each class of benefits an injured employee could receive. Generally, an employee's rights under the act "are governed by the law in force on the date of his injury." *State v. Healy,* 122 R.I. 602, 606, 410 A.2d 432, 434 (1980). In 1974, for example, when respondent suffered his work-related injury,[2] there were limits on the amount of weekly compensation benefits, medical expenses, and specific compensation benefits for disfigurement and loss of use.[3]

---

**2.** We refer to the 1974 version of these provisions without ruling on whether this is, in fact, the applicable law since this case has yet to be adjudicated on the merits and a determination of the applicable law is irrelevant to our.conclusions herein.

**3.** General Laws 1956 § 28–33–17, as amended by P.L.1969, ch. 148, § 1 required an employer to:

> "pay [an] injured employee a weekly compensation equal to sixty-six and two-thirds (66-⅔%) [percent] of his average weekly wages, earnings, or salary * * * and in no case shall the period covered by such compensation be greater than five hundred (500) weeks from the date of the injury nor the amount more than thirty-two thousand five hundred ($32,500.00) dollars."

Section 28–33–5(a), as amended by P.L.1954, ch. 3297, Art. II, § 5(a) provided:

> "The employer shall subject to the choice of the employee as provided. in paragraph (b), promptly provide for an injured employee such reasonable medical, surgical, dental, optical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus for such period as is necessary, in order to cure, rehabilitate or relieve the employee from the effects of his injury, provided, however, that the charges for services and medicines exclusive of hospital services shall not exceed the sum of $300.00 in the case of an employee not receiving hospital services or receiving hospital services for not more than 14 days, and shall not exceed the sum of $600.00 in the case of an employee receiving hospital services for more than 14 days * * *."

Section 28–33–19(n)(2), as amended by P.L. 1972, ch. 213, § 1 provided: "For permanent

■ To provide a totally disabled employee with a measure of relief "once his [or her] employer's liability therefore had terminated[,] the Legislature established the Rhode Island Workers' Compensation Administrative Fund (WCAF) (formerly known as the Second Injury Indemnity Fund). *Healy v. DeSano*, 121 R.I. 325, 329, 397 A.2d 1328, 1330 (1979) (citing *Cabral v. Hall*, 102 R.I. 320, 324, 230 A.2d 250, 253 (1967)). "The [WCAF] is composed of contributions made to it by various insurers and self-insurers in accordance with an assessment formula * * *." *Healy*, 121 R.I. at 330 n. 4, 397 A.2d at 1331 n. 4. The WCAF must pay continued weekly and medical benefits to injured employees who are totally disabled pursuant to G.L.1956 § 28–37–8, as amended by P.L.1954, ch. 3297, Art. II–A, § 26. Section 28–37–8 provided that:

> "In addition to any other payments authorized to be made from the [WCAF] * * * payments from the [WCAF] shall be made for the continuance of compensation and medical expenses * * * to any employee who subsequent to January 1, 1940 has suffered an injury resulting in his receiving compensation payments for total incapacity and such incapacity has continued or will continue beyond the maximum period of payment for total incapacity provided under this chapter."

Section 28–37–9 sets out the payment procedure for the continued payment of benefits provided under § 28–37–8 through a reimbursement mechanism in which the insurer pays the benefits and is later indemnified by the WCAF.

## II

### The Insolvency Fund

■ The Insolvency Fund is entirely different from the WCAF. It was established by the General Assembly " 'to provide a mechanism for the payment of covered claims under certain insurance policies' in order to protect both claimants and policyholders from economic harm when an insurer becomes insolvent." *McGuirl v. Anjou International Co.*, 713 A.2d 194, 197 (R.I.1998) (quoting G.L.1956 § 27–34–2). The Insolvency Fund provides protection to injured employees by "stand[ing] in the shoes of the insolvent insurer, and thereby assum[ing] the insurer's obligations." *Callaghan v. Rhode Island Occupational Information Coordinating Committee/Industry Educational Council of Labor*, 704 A.2d 740, 746 (R.I.1997).

## III

### Facts and Travel

The employee suffered a work-related injury on August 11, 1974 while employed at Washburn Wire Company (employer) as a crane operator. The employee's injury occurred when his left leg fell through an opening between a platform and the floor of the crane cab. At that time, American

---

disfigurement about the face, head, neck, hand, or arm, or leg or body the number of weeks which according to the determination of the workmen's compensation commission is a proper and equitable compensation, not to exceed *three hundred (300) weeks * * *.*" (Emphasis added.)
Section 28–33–19(m), as amended by P.L. 1967, ch. 166, § 1 provided that: "Where any bodily member or portion thereof has been rendered permanently stiff or useless, com-

pensation in accordance with the above schedule shall be paid as if the member or portion thereof had been severed completely * * *."
Section 28–33–19(b), as amended by P.L. 1972, ch. 213, § 1 required compensation: "For loss or severance of either arm above the elbow, or of either leg at or above the knee for a period of *three hundred twelve (312) weeks.*" (Emphasis added.)

Mutual Liability Insurance Company (American Mutual) insured employer for workers' compensation liability. Pursuant to a January 2, 1975 decree of the trial court establishing employer's liability for injury to Thomas's left leg and his total incapacity, American Mutual paid weekly compensation benefits to employee until April 1, 1982. At that point, respondent had received a total of $32,500 in weekly compensation benefits, the maximum allowed under the applicable statute. *See* § 28–33–17, as amended by P.L.1969, ch. 148, § 1.

On June 14, 1983, the trial court found that Thomas continued to be totally incapacitated and that American Mutual must continue to pay him weekly benefits with a right of reimbursement from the WCAF, as provided by § 28–37–8. In March 1989, American Mutual was declared insolvent. *See Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co.,* 763 A.2d 590, 592 (R.I.2000). Thereafter, the Insolvency Fund "stepped into the shoes" of American Mutual and continued to pay weekly compensation benefits and medical expenses to respondent as required by G.L.1956 § 27–34–2.

In 1997, Thomas had surgery on his left knee. In 1998, after the surgery, he filed a petition in the trial court seeking specific benefits, alleging loss of use and disfigurement of the left leg, under § 28–33–19. The trial judge determined that Thomas had no right to receive specific compensation because § 28–37–8 requires the Insolvency Fund to continue paying only weekly compensation benefits and medical expenses. On appeal, the Appellate Division determined that the Insolvency Fund's obligation to pay specific benefits is not extinguished merely because § 28–37–8 does not expressly provide that the Insolvency Fund has a duty to pay specific benefits. Rather, the authority to collect specific benefits derives from § 28–33–19. Thus, the Appellate Division concluded that, because there was no provision expressly eliminating specific compensation benefits, Thomas had a right to receive them. In an order entered on October 2, 2000, the Appellate Division sustained Thomas's appeal and remanded the case for a determination on the merits in accordance with its decision. Thereafter, the Insolvency Fund filed the instant petition.

## IV

### Benefits Under § 28–33–19

 "We review the Appellate Division's decision *de novo,* pursuant to [G.L. 1956] § 28–35–30, for any error of law or equity." *Rison,* 707 A.2d at 678. (Emphasis added.) The employee suffered his work-related injury on August 11, 1974. At that time, the act limited weekly benefits to five hundred weeks or $32,500. Section 28–33–17, as amended by P.L.1969, ch. 148, § 1. As the Insolvency Fund correctly points out, once the limits of § 28–33–17 are exhausted, an employee who seeks to have those benefits continued must proceed under § 28–37–8. But, we reject the Insolvency Fund's second proposition that because § 28–37–8 makes no provision for specific benefits, Thomas has no entitlement to damages under § 28–33–19. This Court held in *Reardon v. Hall,* 104 R.I. 591, 596, 247 A.2d 900, 902 (1968), that under § 28–37–8, which mentions only compensation and medical expenses, there is no right to a continuation of specific benefits for disfigurement and loss of use from the WCAF. This is entirely consistent with our holding in *Rainville,* 448 A.2d at 734, in which we concluded that benefits under § 28–33–19 are to be considered damages rather than true compensation. However, in *Reardon,* we specifically stated that the employee did not file

his petition under § 28–33–19, and therefore, we did not consider "whether [the employee] may bring an action * * * under the provision[s] of § 28–33–19." *Reardon,* 104 R.I. at 594 n. 2, 247 A.2d at 901 n. 2. Therefore, when an employee seeks disfigurement and loss of use benefits under § 28–33–19, there is no reason why he or she cannot recover those benefits from the WCAF since § 28–37–8 makes no mention of such a limitation.

■ The Insolvency Fund asks us to find that § 28–37–8 eliminates specific benefits and medical benefits as soon as an employee has exceeded his statutory maximum of weekly benefits. In support of this argument, the Insolvency Fund relies on *Bottiglieri v. Caldarone,* 486 A.2d 1085 (R.I.1985), where we restated our rule that "a claimant must be totally incapacitated as a direct result of a compensable injury and have exhausted all benefits due him before he can become eligible for [WCAF] payments." *Id.* at 1087 (citing Healy, 121 R.I. at 325, 397 A.2d at 1328). The Insolvency Fund interprets this language to mean that once an employee exhausts his or her weekly compensation benefits all other benefits are also exhausted. We disagree.

The language in *Bottiglieri* recites the original statement of law first written by this Court in *Ricci v. Hall,* 101 R.I. 677, 226 A.2d 692 (1967). In *Ricci* we stated that, "the mandate of [§ 28–37–8] is to make payments to the injured employee when his total incapacity continues beyond the maximum period for payments of compensation for total incapacity prescribed in the act." *Ricci,* 101 R.I. at 679, 226 A.2d at 694. However, the maximum period at issue in *Ricci* was the statutory limit on medical expenses provided in § 28–37–5. *Ricci,* 101 R.I. at 680–81, 226 A.2d at 694. Therefore, this Court stated that an employee could receive a continuation of medical benefits only when that employee had exceeded his statutory maximum under § 28–37–5. Reading that language together with the language in *Bottiglieri,* we conclude that medical benefits are continued under § 28–37–8 when they are exhausted under § 28–33–5, and weekly compensation benefits are continued under § 28–37–8 when they are exhausted under § 28–33–17. Loss of use and disfigurement benefits are exhausted only when the employee has reached the limit provided under § 28–33–19, with no right of continuation under § 28–37–8. In other words, the limits on specific compensation benefits are not found in § 28–37–8, but rather are found in the section of the act that grants the particular class of benefits, § 28–33–19.

We therefore agree with the Appellate Division and conclude that Thomas may be entitled to loss of use and disfigurement benefits under § 28–33–19 with the only limitation on those benefits being the maximum provided within that section.

### Conclusion

Accordingly, for the reasons stated herein, the Insolvency Fund's petition for certiorari is hereby denied. The writ previously issued is quashed. The decree of the Appellate Division is affirmed. The papers in this case are returned to the Appellate Division with our opinion duly endorsed thereon.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.