**LIBERTY MUTUAL INSURANCE CO., Liberty Mutual Fire Insurance Co., and Liberty Mutual Insurance Corp.**

**v.**

**Sherdon WHITEHOUSE, in his capacity as Director of the Department of Business Regulation and as Insurance Commissioner of the State of Rhode Island, Dennis I. Revens, in his capacity as Administrator of Workers' Compensation Court, William R. Tammelleo, in his capacity as Director of the Department of Labor and Director of the Department of Workers' Compensation, and Jeffrey Pine, in his capacity as Attorney General of the State of Rhode Island.**

**C.A. No. 91-0222T.**

United States District Court, D. Rhode Island.

Nov. 23, 1994.

Deming E. Sherman, William P. Robinson, III, Edwards & Angell, Providence, RI, William F. Cupelo, Liberty Mut. Ins. Co., Boston, MA, for plaintiff.

Thomas A. Palombo and Richard B. Woolley, Atty. Gen's Office, Marc Gursky, Providence, RI, for defendant.

*MEMORANDUM AND ORDER*

TORRES, District Judge.

This is an action to declare void and to enjoin enforcement of a Rhode Island statute that requires payment of annual cost-of-living adjustments (COLAs) to workers' compensation recipients who have been totally disabled for more than 52 weeks. The plaintiffs, three affiliated insurance companies (collectively referred to as "Liberty") contend that, to the extent the statute requires COLA payments to individuals injured prior to its effective date, it violates the Contracts, Due Process and Takings Clauses of the United States Constitution. The case is presently before the Court for consideration of cross-motions for summary judgment.

*BACKGROUND*

The pertinent facts underlying this dispute are recounted in this Court's Memorandum and Order denying Liberty Mutual Insurance Co.'s motion for a preliminary injunction. *Liberty Mutual Insurance Co. v. Paradis,* 764 F.Supp. 13, 14 (D.R.I.1991). For present purposes, it is sufficient to note that, for many years, Liberty was one of the principal underwriters of workers' compensation insurance in the State of Rhode Island. In 1990 Rhode Island amended its Workers' Compensation Act to require that, effective May 10, 1991, payments to all recipients classified as totally disabled for more than fifty-two weeks be increased by annual cost-of-living adjustments reflecting changes in the Consumer Price Index compiled by the United States Department of Labor. The amended statute states:

> Where any employee's incapacity is total and has extended beyond fifty-two (52) weeks, *regardless of date of injury,* ... payments made to all such incapacitated employees shall be increased as of May 10, 1991, and annually on the tenth (10th) day of May thereafter so long as the employee remains incapacitated. The increase shall be by an amount equal to the total percentage increase in the annual consumer price index ... as ... computed by the bureau of labor statistics of the United States department of labor.

R.I.Gen.Laws 28–33–18.3(B)(1) (1990 Supp.) [1] (emphasis added).

1. The pertinent provisions of this statute are now codified as R.I.Gen.Laws § 28–33–17(f).

At the time this action was commenced, Liberty was paying benefits to sixty-six workers who were injured before the amendment was adopted and were eligible for COLA increases as a result of the amendment. COLA payments to those individuals totalled slightly more than $32,000.00 per year, which was roughly .04% of the $65 million Liberty annually pays for workers' compensation claims. Liberty estimates that future COLA payments to those individuals during their lifetimes will amount to approximately $11.8 million but it is not clear how that calculation was made.

At the time of the preliminary injunction hearing, Liberty's claim of constitutional violations rested on the premise that, under Rhode Island law, Liberty was precluded from recovering the cost of the COLAs through the ratemaking process. That premise was proven incorrect when the Rhode Island Director of Business Regulation later ruled that insurers may recoup those costs via surcharges on future premiums. Liberty now maintains that it is prevented from recovering those costs because it since has withdrawn from the Rhode Island market.[2]

## *STANDARD OF REVIEW*

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wynne v. Tufts University School of Medicine,* 976 F.2d 791, 794 (1st Cir.1992) (quoting Rule 56). The mere existence of a dispute over factual issues is not enough; the disputed facts must be material. Thus, only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment. *Gadson v. Concord Hospital,* 966 F.2d 32, 33 (1st Cir.1992). In making its determination, the trial court "'must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" *Wynne,* 976 F.2d at 794 (quoting *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990)).

## *DISCUSSION*

### I. *Impairment of Contract*

Liberty argues that the COLA amendment violates the "Contract Clause" contained in Article I, § 10 of the United States Constitution, because it retroactively increases the workers' compensation benefits Liberty is required to pay pursuant to insurance policies issued before the amendment was enacted.

The "Contract Clause" provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts." The Supreme Court has said that "[a]lthough the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'" *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 410, 103 S.Ct. 697, 703, 74 L.Ed.2d 569 (1983) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 434, 54 S.Ct. 231, 238, 78 L.Ed. 413 (1934)). *Accord Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 503, 107 S.Ct. 1232, 1251, 94 L.Ed.2d 472 (1987).

The process of determining whether a state statute substantially impairs contractual obligations consists of a three-part inquiry:

1. Is there a contract relating to the matter that is the subject of the statute;
2. Does the statute effect a change in the law that impairs the contract; and
3. Is the impairment substantial?

*General Motors Corp. v. Romein,* 503 U.S. 181, ——, 112 S.Ct. 1105, 1109, 117 L.Ed.2d 328 (1992).

A statute that substantially impairs a contract violates the Contract Clause unless the statute can be justified as a reasonable

2. Liberty asserts that it stopped underwriting workers' compensation insurance in Rhode Island in December 1991. The defendants dispute that assertion relying on annual reports submitted by Liberty to the Department of Business Regulation.

and appropriate means of achieving a "significant and legitimate public purpose." *Energy Reserves,* 459 U.S. at 411, 103 S.Ct. at 704. The degree of scrutiny utilized in assessing justification is directly proportional to the severity of the impairment. *Id.*

A. *Existence of a Contract*

The Contract Clause is not implicated unless there is a "contractual agreement regarding the specific ... terms" allegedly impacted by the statute in question. *Romein,* 503 U.S. at ——, 112 S.Ct. at 1110. Whether such an agreement exists is a question that must be determined under federal law. *Id.*

Liberty identifies the contractual agreements at issue in this case as "the contracts between Liberty and its *insureds.*" Complaint, ¶ 21, Plaintiff's Memorandum at 9 (emphasis added). Liberty argues that, under those policies, the workers' compensation benefits it is required to pay are limited to the amounts prescribed by the law in effect at the time the policies were issued and that the COLA amendment increases those amounts. In assessing that argument, it must be borne in mind that, for purposes of Contract Clause analysis, provisions regarding the amount of workers' compensation benefits payable to injured employees become terms of a contract only to the extent agreed upon by the parties or incorporated by operation of law. *See, Romein,* 503 U.S. at —— - ——, 112 S.Ct. at 1110–11.

Here, there is no indication that Liberty's insureds *agreed* that Liberty's obligation would be limited to benefit amounts prescribed by the law in effect when the policies were issued and would exclude subsequent COLAs. The policies themselves do not fix the benefit amounts Liberty must pay. Rather, the model "retrospective" policy requires Liberty to pay "all compensation and other benefits required of the insured by [Rhode Island's] workers' compensation law" and provides that, to the extent there is any conflict between the policy and the law, the [t]erms of this policy ... are hereby amended to conform to such law." Moreover, the policies contemplate the possibility that the amounts Liberty is required to pay could be affected by subsequent amendments to the law. Thus, the model "prospective" policy defines the applicable workers' compensation law to include "any amendments to that law which are in effect during the policy period."

Nor is there any basis for finding that Liberty and its insureds impliedly agreed to such a limitation. Indeed, the parties had no occasion to consider Liberty's obligations with respect to COLAs because the policies in question were issued before the COLA amendment was enacted. *See, Romein,* 503 U.S. at ——, 112 S.Ct. at 1110.

A more difficult question is whether, for purposes of Contract Clause analysis, the benefit levels in effect when Liberty's policies were issued constitute a limitation on Liberty's liability that became part of those policies by *operation of law.* In *Romein,* the Supreme Court addressed the circumstances under which workers' compensation laws create vested rights that are cognizable under the Contract Clause. That case involved a Michigan statute permitting employers to reduce the workers' compensation benefits otherwise payable to employees by the amount of wage loss compensation paid to the employees from other employer funded sources. A subsequent amendment retroactively eliminated the "set off" provision and required employers to reimburse employees for workers' compensation benefits previously withheld pursuant to it. One of those employers sued on the theory that the amendment violated the Contract Clause because, by making payments for past periods in accordance with the law then in effect, employers acquired a right to rely on those periods as "closed" and that right was incorporated, by law, into their employment contracts.

The Supreme Court rejected that argument for several reasons. First, it found that the employer had failed to show that Michigan law created a right to rely on past payment periods as closed. *Id.* at —— - ——, 112 S.Ct. at 1110–1111.

Second, it found that the "right" asserted by the employer was not "so central to the bargained for exchange between the parties, or to the enforceability of the contract as a whole, that it must be deemed to be a term

of the contract." *Id.* at ——, 112 S.Ct. at 1111. The Court stated:

> [W]e have not held that all state regulations are implied terms of every contract entered into while they are effective, especially when the regulations themselves cannot be fairly interpreted to require such incorporation. For the most part, state laws are implied into private contracts regardless of the assent of the parties only when those laws affect the validity, construction, and enforcement of contracts.

*Id.*

Finally, the *Romein* Court observed that reading such regulations into private contracts between employers and employees would "severely limit the ability of state legislatures to amend their regulatory legislation. Amendments could not take effect until all existing contracts expired, and parties could evade regulation by entering into long-term contracts." *Id.* at —— - ——, 112 S.Ct. at 1111–12.

Liberty argues that this case is distinguishable from *Romein* because, under Rhode Island law, the workers' compensation payments that an employer must make to its employees are fixed by the law in effect at the time of the injury. *See, Donahue v. Washburn Wire Co.,* 492 A.2d 152, 153–54 (R.I.1985); *State v. Healy,* 122 R.I. 602, 410 A.2d 432, 435 (1980); *Romano v. B.B. Greenberg Co.,* 108 R.I. 132, 273 A.2d 315, 317 (1971). However, that fact does not necessarily require that the law in effect at the time of the injury be incorporated into contracts of insurance between employers and their insurers, particularly when, as in this case, the policies expressly afford coverage for benefits required by subsequent amendments to the law.

In addition, none of the cases cited deal with COLAs and it is far from clear that the Rhode Island Supreme Court would view COLAs as increases in workers' compensation payments that the legislature may not make applicable to previously injured workers. The effect of a COLA is not to increase an employee's benefits. Rather, it is to preserve the purchasing power of the compensation previously awarded. Although Rhode Island has not yet addressed the question, a number of courts have found that COLAs are not "compensation" within the meaning of workers' compensation statutes. *Armstrong's Case,* 416 Mass. 796, 625 N.E.2d 1358, 1360 (1994); *Virginia Dep't of Highways & Transp. v. Williams,* 1 Va.App. 349, 338 S.E.2d 660, 665 (1986). *See, Dietiker v. Industrial Claims Appeals Office,* 867 P.2d 171, 174 (Colo.Ct.App.1993) (discussing cost of living increases to Social Security disability payments).

In any event, if one accepts Liberty's contention that the subject policies limit Liberty's liability to the amounts prescribed by the law in effect when the policies were issued, there could be no impairment of Liberty's contracts. The COLA amendment merely requires that COLAs be paid to some employees of Liberty's insureds. It does not require Liberty to make those payments if Liberty's policies provide otherwise.

B. *Substantial Impairment*

Even if it is assumed, *arguendo,* that the provisions of prior law were incorporated into Liberty's policies, the COLA amendment would not constitute a "substantial impairment" of Liberty's rights under those policies. A statute does not substantially impair a party's contract rights unless it adversely affects that party's reasonable expectations under the contract. *See, Energy Reserves,* 459 U.S. at 416, 103 S.Ct. at 707. In assessing those expectations, one important factor is the degree of governmental regulation regarding the subject of the contract. Thus, in *Energy Reserves,* the Court held that a Kansas statute establishing ceiling prices for natural gas did not violate the Contracts Clause even though it prevented a supplier from increasing the price charged to a utility pursuant to an escalator provision in a pre-existing contract. The Court's holding was based on the finding that, because the parties were engaged in a "heavily regulated" industry, the supplier had no reasonable expectation that its rates would be immune from future restrictions. *Id.* at 413–16, 103 S.Ct. at 705–07.

Those observations are equally applicable to this case. Workers' compensation insur-

ance is a "heavily regulated" business and insurers are on notice that amounts payable to injured workers are subject to change. Indeed, the history of Rhode Island's workers' compensation statute is replete with periodic increases in benefit levels.[3] Moreover, as already noted, Liberty's policies expressly provided that Liberty's obligations were subject to modification by amendments to the workers' compensation laws. In *Energy Reserves* the Court cited a similar provision in the supplier's contract as evidence that the supplier "knew its contractual rights were subject to the alteration by state ... regulation." *Energy Reserves,* 459 U.S. at 416, 103 S.Ct. at 707.

In addition, it is clear that the legislation applying COLAs to workers' compensation benefits was foreseeable long before enactment of the amendment at issue in this case. Such legislation had been adopted in twenty-two states, L. Larsen, *The Law of Workmens' Compensation,* § 60.61 (1992), prior to 1979 and COLA provisions applicable to death benefits and benefits from the Second Injury Fund have been a part of the Rhode Island workers' compensation statute since 1986 or before. R.I.Gen.Laws, §§ 28-33-12, 28-37-30. Furthermore, bills seeking to apply COLAs to workers' compensation benefits were introduced in the Rhode Island legislature every year from 1983 to 1989.

Liberty argues that, to the extent that the COLA amendment applies to workers injured *before* its effective date, the amendment was not foreseeable because, historically, amendments increasing workers' compensation benefits had been applied only *prospectively* to those injured *after* such amendments became effective. That argument ignores the fact that the COLA statutes adopted by other states, the provisions of Rhode Island law adding COLAs to death benefits and payments from the Second Injury Fund, and the COLA amendments considered by the Rhode Island legislature between 1983 and 1989 all apply to some previously injured workers. Legislative consideration of similar COLA amendments for seven consecutive years prior to enactment provided ample notice to Liberty that such legislation might be adopted. *See, Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 732, 104 S.Ct. 2709, 2719, 81 L.Ed.2d 601 (1984).

Liberty's argument also rests on the premise that legislative changes are not foreseeable unless there is a precedent for them. That premise was rejected in *Energy Reserves.* There, the Court attached little significance to the fact that Kansas had never, before, regulated natural gas prices because "[Kansas'] supervision of the industry was extensive and intrusive." *Energy Reserves,* 459 U.S. at 413-14, 103 S.Ct. at 706. Thus, the fact that Rhode Island had not previously extended COLAs to those already receiving general workers' compensation benefits did not give rise to a reasonable expectation that it never would because state regulation of workers' compensation benefits was pervasive and the practice of periodically modifying them was well established.

C. *Justification*

Even if Liberty could establish that the COLA amendment substantially affected its policy obligations, there would be no Contract Clause violation because the amendment constitutes a reasonable and appropriate means of achieving a "significant and legitimate public purpose." *Energy Reserves,* 459 U.S. at 411, 103 S.Ct. at 704. As the Supreme Court has stated:

> [T]he Contract Clause does not operate to obliterate the police power of the States. 'It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in

3. For example, in 1957, the weekly benefit for total incapacity was 60% of the employee's average weekly wage, but not more than $32 nor less than $17 per week and in no case more than $16,000. R.I.Gen.Laws § 28-33-17 (1957). By 1962 the maximum weekly benefit had increased to $40. *Id.* (1962 Supp.) By 1986, the rate of weekly compensation had risen to 66⅔% of the employee's weekly wages with various qualifications. *Id.* (1986).

its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.'

*Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. at 503, 107 S.Ct. at 1251 (quoting *Allied Structural Steel v. Spannaus,* 438 U.S. 234, 241, 98 S.Ct. 2716, 2720, 57 L.Ed.2d 727 (1978)).

In applying that principle, the critical inquiry is whether "the State is exercising its police power, rather than providing a benefit to special interests." *Energy Reserves,* 459 U.S. at 412, 103 S.Ct. at 705. In *Energy Reserves,* the Supreme Court found that establishing price controls for natural gas was a valid exercise of the police power because the State had a significant and legitimate interest in protecting consumers from the hardship associated with the escalation of natural gas prices. *Id.* at 416–17, 103 S.Ct. at 707–08. The Court also quoted, with approval, the observation that "one whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them." *Id.* at 411, 103 S.Ct. at 704 (quoting *Hudson Water Co. v. McCarter,* 209 U.S. 349, 357, 28 S.Ct. 529, 531, 52 L.Ed. 828 (1908)).

It is clear that the COLA amendment at issue in this case serves a significant and legitimate state interest. Workers' compensation laws, which protect the economic well-being of a state's citizens, have long been considered valid exercises of a state's police powers. *Mountain Timber Co. v. Washington,* 243 U.S. 219, 239–40, 37 S.Ct. 260, 265–66, 61 L.Ed. 685 (1917); *Mattson v. Department of Labor and Industries,* 293 U.S. 151, 154, 55 S.Ct. 14, 15, 79 L.Ed. 251 (1934); *Alessi v. Raybestos–Manhattan, Inc.* 451 U.S. 504, 524, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981); *Cataldo v. Admiral Inn,* 102 R.I. 1, 227 A.2d 199, 202 (1967). In Rhode Island, as elsewhere, the purpose of such laws is "to provide some degree of economic help to an injured worker because of a loss of earnings," *Church v. Doherty,* 107 R.I. 432, 267 A.2d 693, 695 (1970), and to "prevent[ ] the injured employee from becoming a public charge." *Geigy Chemical Corp. v. Zuckerman,* 106 R.I. 534, 261 A.2d 844, 848 (1970).

As this Court noted in its earlier opinion, workers' compensation benefits likely constitute all or most of the income of the workers in question and many of them have seen increases in the cost of living seriously erode the purchasing power of their benefits. *Liberty Mutual Insurance Co. v. Paradis,* 764 F.Supp. at 16. The COLA amendment seeks to prevent further erosion of those benefits and, therefore, serves the legitimate and substantial public purposes underlying workers' compensation legislation.

It is equally clear that the COLA amendment is a reasonable and appropriate method of achieving those purposes. In making that determination, the Court must be mindful of the admonition that in cases where the State, itself, is not a contracting party, legislative judgments regarding the methods used to serve legitimate state purposes are entitled to some deference. *Energy Reserves,* 459 U.S. at 412–13, 103 S.Ct. at 704–06.

Here, there are several reasons for concluding that the method selected was reasonable. First, the amendment is narrowly drawn to achieve its limited purpose. It restricts COLA payments to actual increases in the cost of living as reflected in statistical data compiled by the United States Department of Labor. Consequently, its effect is not to increase the benefits paid to totally disabled workers in terms of real dollars; but rather, to preserve the purchasing power represented by those benefits.

Second, since the disabilities giving rise to the COLA payments are attributable to employment from which employers benefited, it is reasonable to require that the burden of such payments be borne by those employers. See, *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 18, 96 S.Ct. 2882, 2893, 49 L.Ed.2d 752 (1976). In this connection, it also should be noted that the COLA amendment was part of a comprehensive package of legislation designed to reform Rhode Island's

workers' compensation laws and, although the COLA provision imposes an additional burden on employers, it is balanced by a number of other provisions beneficial to employers.[4]

Finally, a mechanism has been provided permitting employers to recoup the cost of COLAs through surcharges on future premiums. The fact that Liberty may no longer avail itself of this remedy because it has chosen to withdraw from the Rhode Island market may have some bearing on Liberty's "takings" claim, but it does not affect the reasonableness of the method selected for purposes of Contract Clause analysis.

II. *Due Process*

Liberty argues that the COLA amendment does not satisfy the requirements of due process because any public interest it serves is outweighed by the unfairness of frustrating Liberty's expectation that its obligations would be governed by preexisting law. More specifically, Liberty contends that the unfairness is exacerbated by what it characterizes as the amendment's retroactive application.

It is settled law that

> legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way....

*Usery v. Turner Elkhorn Mining Co.,* 428 U.S. at 15, 96 S.Ct. at 2892 (citations omitted).

In determining whether that burden has been met, the relevant inquiry is "whether 'a rational relationship exists between [the statute] and a legitimate governmental objective.'" *Metropolitan Property & Casualty Ins. Co. v. R.I. Insurer's Insolvency Fund,* 811 F.Supp. 54, 57 (D.R.I.1993) (quoting *Tenoco Oil Co. v. Dep't of Consumer Affairs,* 876 F.2d 1013, 1021 (1st Cir.1989)). In this regard, the standards applicable to economic legislation under the Due Process Clause are less exacting than the limitations imposed on states by the Contract Clause. *Pension Benefit Guaranty Corp. v. R.A. Gray Co.,* 467 U.S. at 732, 104 S.Ct. at 2719.

When legislation applies retrospectively, greater justification for it is required in the sense that due process analysis must take into account the possibility that the legislation may impose an unforeseen liability for actions taken in reliance on preexisting law. *Usery,* 428 U.S. at 15–16, 96 S.Ct. at 2892–2893; *Metropolitan Property & Casualty Ins. Co.,* 811 F.Supp. at 58. However, the mere fact that a statute has retrospective application does not render it unconstitutional. As the Supreme Court has said: "[L]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. This is true even though the effect of legislation is to impose a new duty or liability based on past acts." *Usery,* 428 U.S. at 16, 96 S.Ct. at 2893 (citations omitted). To put it another way, although the burden of justification is greater for legislation that operates retrospectively than for legislation having only future effects, "that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Pension Benefit Guaranty Corp.,* 467 U.S. at 730, 104 S.Ct. at 2718.

In *Usery,* the Supreme Court held that a state statute requiring coal mine operators to pay compensation to miners who became disabled by black lung disease did not violate due process even though the miners' employment terminated long before the statute was enacted. The Court specifically found that "the imposition of liability for the effects of disabilities bred in the past is justified as a rational measure to spread the costs of the employees' disabilities to those who have profited from the fruits of their labor—the

4. The COLA amendment was accompanied by provisions designed to eliminate fraud, impose time limits on the receipt of benefits by partially injured workers, and reimburse employers for erroneously paid benefits. R.I.Gen.Laws §§ 28–33–17.2, 28–33–18(d), 28–35–20. Also, the General Assembly specifically made the provisions allowing civil recovery for failure to report earnings retroactive. *See,* Compiler's Note following § 28–33–17.2, citing § 8 of P.L.1990, chs. 279 and 332, art. 3.

operators and the coal consumers." *Usery,* 428 U.S. at 18, 96 S.Ct. at 2893.

In this case, although the COLA amendment has some retrospective application, characterizing it as retroactive legislation is an overstatement. "[A] statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends are drawn from a time antecedent to its enactment." *Metropolitan Property & Casualty Ins. Co.,* 811 F.Supp. at 58 (quoting *Lohf v. Casey,* 466 F.2d 618, 620 (10th Cir. 1972)). Here, while it is true that some of the workers eligible for COLAs may have been disabled before the amendment was adopted, they are entitled to payments only for *subsequent* years. Unlike the statutes at issue in some of the cases relied upon by Liberty, the COLA amendment does not require payments for periods prior to its effective date.

In any event, both the prospective and retrospective application of the COLA amendment are amply justified. There is a strong public interest in ensuring that benefits paid to workers who are totally disabled for long periods are not eroded by inflation. That interest is even more compelling with respect to workers who became disabled before the amendment was adopted because those workers already have suffered an erosion of their benefits that cannot be rectified by future COLAs. In this case, that interest is not outweighed by any unfairness to Liberty or its insureds. As previously stated, Liberty had no reasonable expectation that Rhode Island would never adopt a COLA provision. Moreover, it is perfectly rational to impose the burden of paying COLAs on those employers who benefited from the disabled workers' services and/or their insurer surrogates, both of whom are in a position to spread the risk. *See Usery,* 428 U.S. at 18, 96 S.Ct. at 2893.

### III. *Taking Clause*

Liberty's final argument is that the COLA amendment violates the Taking Clause of the Fifth Amendment because it "effectively reduc[es] premiums collected by Liberty Mutual in prior years by forcing it to make additional payments which it cannot recoup." Plaintiff's Memorandum at 30.

The Taking Clause, which is made applicable to the states through the Fourteenth Amendment, provides that "private property" shall not "be taken for public use without just compensation." U.S. Constitution amend. V. The purpose of the Taking Clause is " 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. 211, 227, 106 S.Ct. 1018, 1027, 89 L.Ed.2d 166 (1986) (quoting *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960)). In order to establish a violation, "one must demonstrate both that 'property' was 'taken' and that no provision was made for awarding 'just compensation.' " *Medical Malpractice Joint Underwriting Ass'n v. Paradis,* 756 F.Supp. 669, 675 (D.R.I.1991).

The Supreme Court has "eschewed the development of any set formula for identifying a 'taking' forbidden by the Fifth Amendment, and [has] relied instead on ad hoc, factual inquiries into the circumstances of each particular case." *Connolly v. Pension Benefit Guaranty Corp.,* 475 U.S. at 224, 106 S.Ct. at 1025. It has identified three factors to be considered in making that inquiry:

(1) the economic impact of the regulation on the claimant;

(2) the extent to which the regulation has interfered with distinct investment-backed expectations; and

(3) the character of the governmental action.

*Id.* at 225, 106 S.Ct. at 1025.

In *Connolly,* the Court held that a provision in the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA) requiring an employer withdrawing from such a plan to pay its proportionate share of the plans' unfunded liability did not violate the Taking Clause even though no such payments were required by the agreement establishing the plan. *Id,* at 218, 221, 228, 106 S.Ct. at 1022, 1024, 1027. The Court recognized that the imposition of withdrawal liability permanent-

ly deprived employers of those assets necessary to satisfy a statutory obligation to a private party. However, it found that a regulatory statute does not violate the Taking Clause merely because the statute "creates burdens for some that directly benefit others" or "requires one person to use his or her assets for the benefit of another." *Id.* at 223, 106 S.Ct. at 1025 (*citing Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882).

Nor did the Court attach any significance to the fact that no withdrawal payments were required by the agreement creating the plan.

> If the regulatory statute is otherwise within the powers of Congress, therefore, its application may not be defeated by private contractual provisions. For the same reason, the fact that legislation disregards or destroys existing contractual rights does not always transform the regulation into an illegal taking....

*Id.* 475 U.S. at 224, 106 S.Ct. at 1025 (citations omitted).

In making the three part inquiry applicable to Taking Clause determinations, the *Connolly* Court noted that the MPPAA did not result in any appropriation of the employer's assets for use by the government. *Id.* at 225, 106 S.Ct. at 1026. It described any interference with the employer's property rights as "aris[ing] from a public program that adjusts the benefits and burdens of economic life to promote the common good and, under our cases, does not constitute a taking requiring Government compensation...." *Id.* at 225, 106 S.Ct. at 1026 (citations omitted).

In assessing the economic impact on the employer, the Court found it significant that the amount of an employer's withdrawal liability was proportional to that employer's experience with the plan and that there were "a significant number of provisions in the Act that moderate and mitigate the economic impact of an individual employer's liability". *Id.* at 225, 106 S.Ct. at 1026.

Finally, the Court concluded that the MPPAA had little impact on an employer's reasonable investment backed expectations because " '[t]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end.' " *Id.* at 227, 106 S.Ct. at 1027 (quoting *FHA v. The Darlington Inc.,* 358 U.S. 84, 91, 79 S.Ct. 141, 146, 3 L.Ed.2d 132 (1958)).

The observations made in *Connolly* are equally applicable to this case. Here, the COLA amendment does not result in any appropriation of Liberty's assets for the State's own use. *See id.* 475 U.S. at 225, 106 S.Ct. at 1026. Instead, it prevents the benefits payable to permanently disabled workers from being eroded by inflation. Thus, the impact on Liberty flows not from a taking by the State; but, rather, "from a public program that adjusts the benefits and burdens of economic life to promote the common good." *Id.*

Moreover, although the COLA amendment will have an appreciable economic impact on Liberty, the severity of that impact is mitigated by several factors that already have been noted. First, Liberty is required to pay COLAs only to workers who are *totally* incapacitated for *more than fifty-two weeks* and the COLA amounts are limited to actual increases in the cost of living. Second, the COLA amendment was part of a legislative package that contained provisions beneficial to employers as well as provisions imposing additional burdens on them. *See, supra* note 4. Finally, employers are permitted to recover the cost of COLAs through the rate-making process. The fact that Liberty has chosen to withdraw from the market does not alter the fact that a "reasonable, certain and adequate provision for obtaining compensation" was provided at the time of the alleged taking. *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985) (quoting *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 124–25, 95 S.Ct. 335, 349, 42 L.Ed.2d 320 (1974)).

Liberty fares no better under the third prong of the *Connolly* test. As already noted, Liberty had no reasonable investment backed expectation that Rhode Island would never require COLA payments to previously injured employees. The finding in *Connolly* that employers were on notice that one goal

of ERISA was to insure that employees would receive the benefits promised to them and that Congress was contemplating retroactive legislative changes to achieve that goal are equally applicable here. Liberty must have been aware that one objective of workers' compensation statutes is to preserve the benefits payable to injured workers and that a COLA amendment having some retrospective application was being contemplated.

In short, assessment of the factors enumerated in *Connolly* leads this Court to conclude that Liberty's "taking" claim is without merit.

*CONCLUSION*

For all of the foregoing reasons, the defendants' motion for summary judgment is granted and Liberty's cross motion for summary judgment is denied. The clerk is directed to enter judgment for the defendants.

IT IS SO ORDERED.