299 A.2d 168.

YVONNE PARENTEAU *vs.* ZIMMERMAN ENGINEERING, INC.

JANUARY 22, 1973.

PRESENT: Roberts, C.J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This is a widow's petition for death benefits under G. L. 1956, §28-33-12, as amended by P. L. 1963, ch. 46, sec. 1.[1] The trial commissioner granted the benefits

[1]Public Laws 1963, ch. 46, sec. 1, read as follows:

"Death benefits payable to dependents.—If death results from the injury, the employer shall pay the dependents of the employee, wholly dependent upon his earnings for support at the time of his injury, or death, whichever is greater in number, a weekly payment equal to sixty percent (60%) of his average weekly wages, earnings or salary, but not more than thirty dollars ($30.00), nor less than twenty-six dollars ($26.00) a week, for a period of five hundred (500) weeks from the date of the injury, except as hereinafter provided. in case the dependent is the widow of such employee upon whom there is dependent one (1) child or more of the deceased employee including an adopted child or stepchild under the age of eighteen (18) years or over said age but physically or mentally incapacitated from earning, the employer shall pay such widow not more than thirty dollars ($30.00) a week plus four dollars ($4.00) a week for each such dependent child. Upon the death of any such widow or if there be no widow then upon the death of the injured employee the compensation payable under this chapter shall thereafter be paid to such dependent child or children of the injured employee and in case there is more than one (1) child the compensation shall be divided equally among them, and such compensation shall be not more than thirty dollars ($30.00) per week for such dependent child plus four dollars ($4.00) per week for each such additional dependent child. If the employee leaves dependents only partly dependent upon his earnings for support at the time of his injury or death, the employer shall pay such dependent for a period of five hundred (500) weeks from the date of the injury or death, whichever is greater in number, a weekly compensation equal to the amount of the

sought by the petitioner. The cause is here on the respondent employer's appeal from the decree of the full commission which affirmed the decree entered by the trial commissioner.

The record of the hearing before the trial commissioner contains the following pertinent evidence. The petitioner is the widow of the deceased employee, Hector J. Parenteau, hereinafter referred to as the decedent. On August 20, 1968, decedent was working as a steamfitter for respondent when a cement block fell from a staging above and hit him in the back while he was in a stooped position. The block weighed approximately 25 to 30 pounds and fell from a window ledge about five feet above decedent. The petitioner testified that decedent was in good health immediately prior to August 20, 1968; that he returned home that evening in pain, was unable to eat, had an awful burning feeling and could not straighten out; and that he suffered from headaches, inability to sleep, dizziness, nausea, tiredness and pain in the head, neck and stomach from the time of his injury to his death on October 4, 1968.

The decedent did not work after August 20, 1968. He went to the emergency room of Sturdy Memorial Hospital in Attleboro, Massachusetts on August 22, 1968. The hospital record diagnosis was contusion of the dorsal spine. On September 12, 1968 and several times thereafter until September 30, 1968, decedent was treated by Dr. Eugene E.

average weekly contribution by the employee to such partial dependents, not exceeding the weekly payments herein provided for the benefit of persons wholly dependent. When weekly payments have been made to an injured employee before his death, the compensation to dependents shall begin from the date of the last of such payments, but shall not continue more than five hundred (500) weeks from the date of the injury; and provided, further, that, if the deceased leaves no dependents at the time of the injury or death, the employer shall not be liable to pay compensation under chapters 29 to 38, inclusive, of this title except as specifically provided in §28-33-16."

Roy, his family physician in Attleboro. Doctor Roy died before being called to testify in this case.

On October 4, 1968, decedent fell from his bed to the floor at about 5 a.m. He was pronounced dead upon arrival at Sturdy Memorial Hospital. Shortly thereafter, Dr. Rudolph Osgood, a medical examiner for Bristol County, Massachusetts, performed the autopsy which disclosed that the cause of decedent's death was a ruptured congenital cerebral aneurysm which involved the anterior communicating artery located at the base of the brain.

Doctor Thomas C. McOsker, a local neurosurgeon, and Dr. Osgood, both of whom testified for respondent, were of the opinion that there was no causal connection between the August 20, 1968 injury and the cause of death.

Doctor Morton S. Berk, an internist specializing primarily with cardiology and blood vessel disorders, testified for petitioner. He was of the opinion that decedent's death was caused by the injury of August 20, 1968. His opinion was based upon his finding that the blow which decedent sustained caused the congenital aneurysm to rupture, that bleeding developed causing intracranial hemorrhage which resulted in decedent's death.

Because of the conflicting medical testimony, the trial commissioner, acting pursuant to the provisions of G. L. 1956 (1968 Reenactment) §28-35-24,[2] appointed an impar-

---

[2]General Laws 1956 (1968 Reenactment) §28-35-24 reads as follows:

"Examination by or opinion of impartial physician.—Whenever the testimony presented at any hearing indicates a dispute, or is such as to create doubt, as to the extent, nature or cause of disability or death, the workmen's compensation commission may direct that the injured employee be examined, or may obtain an opinion without examination of an impartial, competent physician designated by the workmen's compensation commission who is not under contract with or regularly employed by a compensation insurer or self-insured employer. The expense of such examination shall be paid by the employer. The report of such examination shall be transmitted in

tial medical examiner, Dr. Julius Stoll, Jr., a local neurosurgeon. He asked Dr. Stoll for his impartial medical opinion as to

"What, if any, causal connection existed between the incident at work on August 20, 1968 and the death of the decedent caused by a ruptured congenital cerebral aneurysm which occurred on October 4, 1968?"

Doctor Stoll's report states that he reviewed the information included with the trial commissioner's letter asking him for an impartial medical opinion and he listed the documents which he reviewed. Because of the conflict in the evidence submitted to him by the commissioner, Dr. Stoll gave his opinion concerning causation in the alternative. He stated his opinion as follows:

"The patient died from rupture of a congenital aneurysm of the anterior communicating artery which had been present all of his life. The question to be answered here concerns whether or not the blow he received on 8-20-68 contributed to the rupture of this aneurysm. As I have reviewed the information supplied to me, there is some discrepancy which I think is important. It is true that a blow applied either to the head or the upper dorsal area may well cause an increase in blood pressure at the time and I don't believe it is important whether it is upper spine or head that was struck. This could conceivably either weaken the aneurysm or produce slight bleeding at that time. This may then have contributed to the rupture of the aneurysm as the final incident which apparently occurred on October 4, 1968 some six weeks after the accident. If the testimony of Mrs. Parenteau is true, which states that since the accident he complained of being dizzy, had pain in the head, neck and stomach, it may well indicate that the aneurysm did leak slightly at the time of the accident due to the increased blood pressure

---

writing to the workmen's compensation commission and a copy thereof shall be furnished by the workmen's compensation commission to each party who shall have an opportunity to rebut the same on further hearing."

which is involved with such a blow, and in which case I think one would have to say that the accident contributed towards the rupture of this aneurysm earlier than it might have in the course of natural events. However, conflicting evidence here is the report of the patient. This is the one dated 9/27/68 in which the patient described a burning sensation in his back, but did not describe headache or pain in the neck.

"I do not have Dr. Eugene Roy's records. I feel that if the evidence indicates that he did have pain in the head and neck which persisted from the time of the accident for a reasonable period of time then one has to consider the accident as contributing toward the rupture of the aneurysm. However, if the pain were confined to the upper back then I feel that the accident was not contributory toward the rupture of this aneurysm."

The trial commissioner found as a fact that decedent did have pain in the head and the neck which persisted from the time of the accident for a reasonable period of time and that decedent suffered from symptoms of a different nature than those usually associated with a contusion. He found petitioner's testimony concerning decedent's condition between August 20, 1968 and October 4, 1968 to be worthy of belief. He stated that he did not give "great weight" to Dr. Osgood's opinion and he gave his reason for so doing. He found that the preponderance of the evidence established that the death of decedent was caused by the blow sustained on August 20, 1968.

The full commission affirmed the findings and orders of the trial commissioner.

I

The respondent's first contention is that the findings of fact contained in the decree of the trial commissioner and affirmed by the final decree of the full commission are not supported by legal evidence and therefore are not binding and conclusive on this court. Specifically respondent argues that Dr. Berk's testimony was not legally competent be-

74

cause he had never seen decedent prior to the latter's death, had never treated him, was not present during the autopsy, had derived all of his facts concerning decedent's death from petitioner, who naturally had an interest in the outcome of the case, and, finally, because he had not reviewed all of the pertinent medical records before coming to his opinion as to causal relationship.

This argument is without merit. Doctor Berk qualified as an expert in his field. It is clear from the transcript that he based his opinion in part on petitioner's statements to him regarding decedent's medical history, in part on a study of some of the medical records concerning decedent, and in part on certain facts contained in hypothetical questions. The mere fact that Dr. Berk had not examined decedent, was not present during the autopsy, and had not reviewed all the medical records, does not affect the admissibility of his opinion testimony, although those factors may affect the weight to be given to his opinion. The respondent has advanced no valid reason for excluding Dr. Berk's testimony.

II

The respondent next contends that the trial commissioner and the full commission misconstrued and misconceived the evidence and the legislative intent of §28-35-24.

A

We address ourselves first to respondent's contention that (a) a close analysis of Dr. Stoll's testimony will show a complete lack of testimony that the blow on the back did, in fact, cause the injury resulting in decedent's death; and (b) that Dr. Stoll's opinion as to causation was purely speculative in nature. The respondent pin points certain portions of Dr. Stoll's testimony to support its argument. We do not consider it necessary to discuss the testimony referred to because we are satisfied that there is no validity to this argument.

What we said with respect to the admissibility of Dr. Berk's testimony is equally applicable here. The arguments made by respondent go to the weight of the doctor's testimony, not to its admissibility or competence. Doctor Stoll was of the opinion that the August 20, 1968 injury was the cause of decedent's death if the evidence indicated decedent had pain in the neck which persisted from the time of the accident for a reasonable period of time. The trial commissioner found these facts to be true, and petitioner's testimony was competent evidence to support this finding.

Even though Dr. Stoll had never seen decedent he had the benefit of various evidentiary facts concerning the accident on August 20, 1968, decedent's physical condition, and medical information which had been submitted to him by the trial commissioner. He referred to these facts in his written report. Additionally, during his testimony he was given facts in hypothetical questions which formed the basis of his opinion. It appears from the transcript that no objection was made to either the facts in the hypothetical question or to the opinion given in response to the assumed facts.

Doctor Stoll also testified that although he did not refer to Dr. Roy's report in forming his opinion of October 26, 1970 on causation, it would not change his opinion, and, that it made no difference as to his opinion on causation whether decedent was struck by the cement block at the base of the skull or in the dorsal area of the back.

*Taglianetti* v. *Jo-Dee Corporation*, 103 R. I. 552, 239 A.2d 192 (1968) and *Woods* v. *Safeway System, Inc.*, 102 R. I. 493, 232 A.2d 121 (1967), both cited by respondent, are inapplicable because of different factual situations.

Nor is there any merit to respondent's contention that the trial commissioner misconstrued and misconceived the thrust of the testimony of Dr. Osgood and Dr. Roy, both of whom indicated that there was no causal connection.

The trial commissioner, as we have previously stated, obviously was not impressed with Dr. Osgood's testimony and he also commented on Dr. Roy's opinion, stating that " * * * Dr. Roy's opinion, though stated in unequivocal language, was undoubtedly based almost entirely on the hospital or autopsy record because Dr. Roy apparently did not see the decedent after September 30, 1968."

We have read the case of *Backstrom* v. *Turner Constr. Co.*, 132 N. Y. S.2d 126, 284 App. Div. 368 (1954), and find no reason to disagree with the doctrine set forth in that case. However, factually that case is substantially different from the case at bar. Here respondent has not satisfactorily pointed to any essential fact that was omitted in the hypothetical question or that was in any way kept away from Dr. Stoll.

## B

We come now to respondent's contention that the commission misconceived and misconstrued the thrust of §28-35-24. It concedes that under that section the commission has the authority to appoint an impartial medical examiner whenever there is a dispute as to the nature or cause of disability or death. However, respondent argues that §28-35-24 does not give the commission authority to "[s]end only portions of a transcript to an impartial medical examiner upon which to base an opinion."

It is true, as respondent argues, that §28-35-24 does not expressly authorize the trial commissioner to send "only portions of a transcript" to an impartial medical examiner upon which to base an opinion. Indeed, §28-35-24 does not expressly authorize the trial commissioner to send any part of the record. However, we are satisfied that such authority is implicit in the language of that section. Section 28-35-24 provides that the commission "may obtain an opinion without examination of an impartial, competent physician." In exercising this authority the trial commissioner

is implicitly and necessarily invested with powers to furnish such portions of the record as he, in his sound discretion, deems necessary or essential to enable the impartial medical examiner to perform his duty. In the case at bar respondent has failed to show that there has been an abuse of discretion on the part of the trial commissioner. Nor, as we have said above, has respondent shown that the trial commissioner omitted an essential fact from the record given to the impartial medical examiner.

The respondent next contends that §28-35-24 does not authorize the trial commissioner to "[a]llow the impartial medical examiner to be the final 'trier' of fact." The respondent argues in substance that the trial commissioner, in effect, let Dr. Stoll decide the ultimate fact, namely, causal connection. We agree that §28-35-24 does not make the impartial medical examiner the final "trier" of fact. Under our Workmen's Compensation Act the trial commissioner is the trier of fact. But this does not mean that an expert may not render an opinion on an issue of fact within his area of expertise in a proper case. The rule governing expert testimony has been well stated in *Morgan* v. *Washington Trust Co.*, 105 R. I. 13, 17-18, 249 A.2d 48, 51 (1969), and requires no repetition here. The trial commissioner's appointment of Dr. Stoll and his request for an opinion on the question of causation was proper. *Zaccaria* v. *Paragon Worsted Co.*, 96 R. I. 105, 189 A.2d 620 (1963). The question of causation here was one that required a medical answer. We believe that the question as posed by the trial commissioner to Dr. Stoll was within the legislative intent in enacting §28-35-24. But the ultimate finding of fact on this issue rested with the trial commissioner.

## III

The respondent's final argument is that the trial commissioner erred in drawing certain inferences. He refers

first to the fact that in arriving at his decision the trial commissioner placed great weight on the inference that

"* * * the employee was suffering from conditions of a different nature than those usually associated with a contusion. I conclude that the decedent did have 'pain in the head and neck which persisted from the time of the accident for a reasonable period of time' as Dr. Stoll expressed it."

The respondent states that the trial commissioner indicated that he drew this inference from the testimony of the decedent and of his widow. However, respondent also states that one of the exhibits introduced by petitioner was a statement from the decedent himself in which he never once indicated that he was having pains in the head and neck which had persisted since the time of the accident with the cinder block. Even though decedent did not mention pains in the head and back, it is undisputed that his widow, petitioner here, did testify that decedent suffered pains in the head and neck from the date of the accident until his death. The fact that there was no medical evidence as to what way the symptoms of a contusion would manifest themselves does not affect the reasonableness of his finding, that decedent did have pains in the head and neck after the August 20, 1968 accident.

The respondent further contends that the trial commissioner erred in inferring that Dr. Osgood was of the opinion that it was absurd to try to establish any connection between a blow on the back and the rupture of the aneurysm. Having read Dr. Osgood's deposition, we cannot fault the trial commissioner's interpretation of Dr. Osgood's testimony or his decision not to give great weight to Dr. Osgood's opinion. The important factor here is that the trial commissioner, faced with conflicting medical opinions, chose to rely on the opinion of Dr. Berk and Dr. Stoll on the issue of causation. This he had a right to do. In the circumstances we cannot disturb the decree of the full com-

mission which affirmed all the findings and orders of the trial commissioner.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the Workmen's Compensation Commission for further proceedings.

*Pearlman & Pearlman, Alan Pearlman,* for petitioner.

*Anderson & Kane, Vincent F. Kane,* for respondent.