Estrela F. PONTE

v.

MALINA COMPANY, d.b.a.
Armour Handcrafts.

No. 98–337–M.P.

Supreme Court of Rhode Island.

Jan. 26, 2000.

Michael J. Farley, East Providence, for Plaintiff.

Charles Garganese, Jr., Warwick, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

■ This is a workers' compensation case involving an employee who suffered more than one incapacitating, work-related injury in 1986 from an on-the-job accident. It presents us with the following issue: did the expiration of any applicable time period bar the employee's attempt in 1993 to amend a 1986 memorandum of agreement (MOA) and to obtain workers' compensation benefits based upon an original injury

that was not included in the 1986 MOA?[1] For the reasons set forth below, we hold that no applicable filing period had expired to bar this injured employee's 1993 petition to amend the 1986 MOA. Nevertheless, any petition filed by the employee to obtain additional compensation *retroactive* to the date of the 1986 MOA (or to some later date, if the MOA was still in effect) based upon such an omitted, original injury—or based upon some new and different original injury included in the newly amended MOA—had to be brought within the then-applicable three-year period specified in General Laws 1956 § 28–35–57, as amended by P.L.1982, ch. 32, art. I, § 10 of the Workers' Compensation Act (WCA).[2] However, once an MOA has been amended to include a previously omitted, original injury, petitions for review based upon an alleged recurrence of the employee's incapacity shall be subject to the provisions of § 28–35–45, as amended by P.L.1992, ch. 31, § 13.

The petitioner, Estrela F. Ponte (employee), claims that § 28–35–5, as amended by P.L.1982, ch. 32, art. I, § 10[3] entitled "Appeals from memorandum of agree-ment," allowed her to petition in 1993 for the amendment to the 1986 MOA filed by her employer in order to add another injured body part to the injuries her employer had originally specified therein. Because § 28–35–5 does not specify any time period for filing such petitions, a panel of the Workers' Compensation Court's (WCC) Appellate Division erred, she contends, in reversing a trial judge's decision allowing her to amend the 1986 MOA to add another injured body part. The respondent, Malina Company (employer), on the other hand, agrees with the panel's holding that § 28–35–57, entitled "Limitation of claims for compensation," applied to such petitions. Therefore, employer contends that the panel properly rejected employee's 1993 attempt to amend the 1986 MOA and to obtain retroactive compensation for an injury that was not included in that MOA because it was filed long after § 28–35–57's then-existing three-year-limitations period had expired. The employee also claims that the panel erred in determining that she failed to prove a return of incapacity, and in holding that her employ-

1. Pursuant to General Laws 1956 § 28–35–1 of the Workers' Compensation Act (WCA), an employer who makes payments of compensation to an employee under the WCA is required to file a memorandum of agreement (MOA) with the Rhode Island Department of Labor and Training and to serve a copy thereof upon the employee and his or her attorney. Upon filing an MOA, "the memorandum shall be as binding upon the party filing the memorandum as a preliminary determination, order, or decree." Section 28–35–1(e).

2. Section 28–35–57, as amended by P.L.1982, ch. 32, art. I, § 10 then provided, in pertinent part, as follows:

 "**Limitation of claims for compensation.**—An employee's claim for compensation under chapters 29 to 38, inclusive, of this title shall be barred unless payment of weekly compensation shall have commenced or a petition, as provided in this chapter, shall have been filed within three (3) years after the occurrence or manifestation of the injury or incapacity * * *.

 The time for filing claims shall not begin to run in cases of latent or undiscovered physical or mental impairment due to inju-

ry including disease until (1) the person claiming benefits knew, or by exercise of reasonable diligence should have known, of the existence of such impairment and its causal relationship to his employment or (2) after disablement, whichever is later, provided, that in any such case in which indemnity benefits have been paid, the claimant's right to compensation is preserved without time limitation."

3. In relevant part, the applicable version of § 28–35–5, as amended by P.L.1982, ch. 32, art. I, § 10, provided as follows:

 "any injured employee * * * who shall have been aggrieved by a memorandum of agreement in that it: * * * (2) fails to set out correctly all the injuries received by the injured employee; * * * then upon petition [to the Workers' Compensation Court (WCC)], setting forth all the additional facts, filed by the aggrieved party and served in the same manner as is provided in chapters 29 to 38 * * * the [WCC] shall hear any and all such petitions and make its decision in accordance with the provisions of said chapters."

er was not responsible for compensation allegedly owed to her from the date of her alleged return of incapacity. For the reasons explained below, we grant employee's certiorari petition in part by allowing her to amend the 1986 MOA to include her neck injury, but we deny the petition and affirm the panel's decision in all other respects.

## Facts and Travel

### The Memorandum of Agreement and WCC 87–9010

In May 1986 employee injured herself while working as a machine operator at her employer's place of business. On July 7, 1986, employer filed an MOA with the Rhode Island Department of Labor and Training and duly served employee with a copy. The MOA described employee's injury as a "sprain on left shoulder." This description of her injury, employee later alleged, was incomplete in that it failed to mention the injury to employee's neck (that is, her cervical area) that she also suffered when she hurt her shoulder at work. Nevertheless, employee initially failed to take any steps to amend the MOA while she received workers' compensation benefits in accordance with this MOA until September 6, 1988. On that date employer's 1987 petition for review resulted in a termination of employee's benefits based upon the trial judge's finding that employee's work-related left-shoulder injury no longer was disabling (WCC 87–9010). The Appellate Division affirmed this decree on November 16, 1989. The employee then petitioned for a writ of certiorari, which this Court denied in January, 1990.

### WCC 88–4912 and WCC 89–8002

In 1989 employee filed two subsequent petitions. Petition 89–8002 alleged a recurrence of her incapacity in October 1988 and continuing, arising from her original injury. Petition 88–4912 similarly alleged a recurrence of incapacity arising from the same injury, but employee included in that petition a request that the MOA be amended to include a neck injury as well as her left-shoulder injury. Counsel for employee, however, indicated to the trial judge that the petition requesting an amendment to the MOA should be withdrawn. The trial judge stated, "I'm going to withdraw 88–4912," to which employer's counsel responded, "That's the one that should be withdrawn." Counsel for both parties stipulated to the withdrawal of 88–4912 *in toto* by signing their names next to the word "withdrawn" on the petition.

A WCC trial judge then heard petition 89–8002 on its merits. Both employee and employer were represented by counsel and were given an opportunity to present their cases. After a review of the medical evidence—which primarily addressed the employee's complaints about her neck injury—the trial judge found that no recurrence of incapacity had occurred as of October 1988, and continuing. Hence, the court denied employee's petition on February 28, 1990, and employee did not appeal.

### WCC 93–6139

In 1993 employee, through new counsel, filed a second petition to amend the MOA (WCC 93–6139). This time employee alleged that the MOA did not "accurately and completely set forth and describe the nature and location of all injuries sustained by [her]" in 1986. Once again employee sought to amend the 1986 MOA to include her neck injury in addition to her left-shoulder injury. In her brief to this Court, employee asserted that "inexplicably" the original MOA had failed to state that she also had suffered a neck injury at the same time that she suffered her left-shoulder injury.

The employer opposed the petition by arguing (1) that the applicable three-year limitations period for filing compensation claims (§ 28–35–57) barred any amendment to the MOA that would add a neck injury, and (2) that the proposed MOA amendment was barred by the doctrine of

res judicata. With regard to employer's § 28–35–57 argument, the court noted that there was some ambiguity in the WCA concerning what limitations period, if any, applied to the petition to amend the MOA. The trial judge stated that the document under review was an MOA, and therefore § 28–35–45,[4] which governed review and modification of decrees, did not apply. Nor did § 28–35–61[5] apply, according to the trial judge, because that section also dealt solely with decrees. Instead, the court held that § 28–35–5 applied. Because that section failed to indicate a specific limitations period for petitions addressed to an MOA that "fails to set out correctly all the injuries received by the injured employee," the trial judge found that employee's petition was timely. Nevertheless, the trial judge held that "the Statute of Limitations that is applicable to [§ 28–35–5] although not stated in the act is ten years. I believe that this Court should not hold it to be six months, [which is the period specified in § 28–35–61 for amending a decree]." In support of his ruling, the trial judge stated that MOAs "are not really agreements to the extent that they represent an agreement reached by both sides in a workers' compensation case. They are in reality a unilateral document usually filed by the employer * * *. I believe the [limitations period] most applicable with respect to a Statute of Limitations [that] should be applied for the petitioner to amend the Memorandum of Agreement * * * is ten years."

The trial judge noted that the WCA failed to indicate the appropriate limitations period that would be applicable to petitions filed under § 28–35–5. The case that came closest to commenting on this issue was *Vieira v. Davol, Inc.*, 120 R.I. 944, 948, 392 A.2d 375, 377 (1978), in which this Court merely assumed, without deciding, that § 28–35–57's usual limitations period (three years when the trial judge faced this issue), did *not* apply to petitions filed under § 28–35–5 and that the employee's petition thereunder was therefore timely. The *Vieira* Court noted that § 28–35–5 "has no explicit limitation for increasing the compensation rate may be made effective from the date of the injury * * *."

---

4. Section 28–35–45, as amended by P.L.1992, ch. 31, § 13 then provided, in pertinent part, as follows:

 "**Review and modification of decrees.**—At any time after the date of the approval of any agreement or at any time after the date of the entry of any decree concerning compensation, and if compensation has ceased thereunder, within ten (10) years thereafter, any agreement, award, order, finding, or decree may be from time to time reviewed by the workers' compensation court upon its own motion or upon a petition of either party upon forms prescribed and furnished by the court, after due notice to the interested parties, upon the ground that the incapacity of the injured employee has diminished, ended, increased or returned * * * or that the weekly compensation payments have been based upon an erroneous average weekly wage * * *. Upon this review the workers' compensation court may decrease, suspend, increase, commence or recommence compensation payments in accordance with the facts, or make such other order as the justice of the case may require. No review shall affect the agreement, award, order, finding or decree as regards money already paid, except that an award

5. The applicable version of § 28–35–61, as amended by P.L.1992, ch. 31, § 13 provided as follows:

 "**Decrees procured by fraud.**—(a) The workers' compensation court may, upon petition of an employee, the dependents of a deceased employee, an employer, an insurance carrier, or any other party in interest, vacate, modify, or amend any final decree entered within a period of six (6) months prior to the filing of the petition, either by a single judge or by the full court, if it shall appear that the decree;
 (1) Has been procured by fraud or
 (a) Does not accurately and completely set forth and describe the nature and location of all injuries sustained by the employee.
 (b) The petition shall be served in the same manner as is provided for in chapters 29—38 inclusive, of this title, for all other petitions.
 (c) The workers' compensation court shall hear any and all such petitions and make its decision in accordance with the provisions of those chapters."

such appeals." *Vieira*, 120 R.I. at 948, 392 A.2d at 377. The *Vieira* Court further assumed, without deciding, "that a party [could] have an agreement modified under § 28–35–5 and not just have it set aside," *id.* at 949, 392 A.2d at 377, but observed in a footnote that "[t]he employee might, however, face a problem with the statute of limitations in bringing a new action if the agreement were nullified after the statute had run." *Id.* at 949 n. 3, 392 A.2d at 377 n. 3. Based on the dearth of case law, and on the premise that the WCA should be construed liberally in favor of employees, the trial judge applied a ten-year limitations period by analogy to § 28–35–45 (specifying a ten-year-limitations period for review and modification of agreements and decrees).

Furthermore, the trial judge held that there was no res judicata effect pertaining to the ability of employee to petition to amend an MOA. The trial judge ruled that the earlier petition to amend, 88–4912, had been voluntarily withdrawn "without prejudice." According to the court, the version of Article II, Rule 2.23(A) of the WCC Rules of Practice that was in effect when the earlier trial judge had allowed the withdrawal did not require such a withdrawal to be "with prejudice." *See* W.C.C.—R.P. 2.22(a) (former version) (A Supreme Court order dated March 10, 1994, substituted W.C.C.—R.P. 2.23(A) for the former Workers' Compensation Court Rules of Practice). Therefore, according to the trial judge, employee's 1993 petition to amend the 1986 MOA (93–6139) was not barred by the doctrine of res judicata; moreover, according to the trial judge, the amendment aspect of petition 88–4912 had never been litigated on the merits. As a result, the trial judge ordered the 1986 MOA to be amended to add employee's neck injury, but the court's order failed to indicate whether employer was therefore responsible for any compensation payments due to employee by virtue of that order. The employer timely appealed this 1993 order allowing the MOA amendment to the WCC's Appellate Division.

### WCC 95–5023 and WCC 95–5024

In 1995 employee filed two more petitions that were later ordered consolidated for hearing: 95–5023 and 95–5024. The former alleged that she suffered yet another return of incapacity, this time *either* as of September 7, 1988, and continuing (which was one day after employer's petition to review employee's left-shoulder injury had resulted in a termination of benefits per the decree in 87–9010), *or* as of June 13, 1994, and continuing (the date of the trial judge's 93–6139 decree that added the neck injury to the earlier MOA). The employee alleged that she suffered a recurrence of her neck injury as of both dates. Notwithstanding the pending appeal by employer of the decree in 93–6139, the trial judge accepted for the sake of argument that employee's neck injury was now properly before her as part of an amended MOA. However, this trial judge also found that the issue of a recurrence of incapacity because of employee's neck injury already had been litigated and finally decided against employee in 89–8002 when the trial judge in that hearing denied employee's petition for recurrence of her 1986 work-related injury. The employee asserted that the trial judge's decision in 93–6139 allowed the amendment to relate back to the original 1986 memorandum; she also argued that the neck injury was never litigated and decided on its merits in 89–8002 because "[t]he only injury which could be reviewed under the prior petitions was that which was legally before the Court to wit: the sprained left shoulder." Nevertheless, the court in 95–5023 reviewed the record in 89–8002 concerning an alleged recurrence of employee's 1986 injury and found that there were major portions of that record that primarily discussed employee's neck injury as well. The trial judge held that the decision in 89–8002 "was not based upon the ground that the memorandum of agreement did not include a neck injury." Therefore, the trial judge held that the recurrence date of

September 7, 1988, to be applied to petition 95–5023 was barred by the doctrine of res judicata because the court in 89–8002 did in fact evaluate employee's neck injury on its merits and found no evidence of any recurrence of any incapacitating injury during the period covered by that petition.

The trial judge next determined that employee failed to prove by a preponderance of the evidence her claim of a recurrence of incapacity as of June 13, 1994, and continuing. In doing so, the trial judge reviewed the record, the prior decisions and decrees, and the medical evidence available, and found that the opinions of employer's experts were more persuasive and probative than those of employee's experts.

In employee's second 1995 petition, number 95–5024, employee petitioned to enforce the 93–6139 decree that allowed the MOA to be amended. The employee contended that this decree implicitly required employer to pay compensation benefits. In substance, employee alleged that the decree in 93–6139 had ordered her employer, by implication, to pay compensation for the neck injury that was not included in the original MOA. The trial judge denied the petition, stating that in allowing the MOA to be amended, the trial judge in 93–6139 did not order employer to pay any additional compensation. On the contrary, the trial judge ruled that the mere order in 93–6139 allowing the MOA amendment did not equate to an order for employer to pay weekly benefits. Furthermore, the court held that while the 93–6139 decree "amended the description of the injury on the [1986] memorandum; it did not alter the [87–9010] finding which discontinued the payment of weekly benefits [as of September 6, 1988]."

### The Appellate Division Decision on the Consolidated Appeals

### (WCC 93–6139, 95–5023 and 95–5024 consolidated)

On consolidated appeals to a three-judge panel of the WCC's Appellate Division, the panel reversed the trial judge's finding in 93–6139 that allowed the MOA amendment. After a review of the various possible limitations periods that might apply to employee's claims, the panel held that neither § 28–35–45 nor § 28–35–61 were applicable to the proposed MOA amendment at issue. Instead, the panel reviewed various cases from this Court and concluded that unless the original MOA contained a misdiagnosis whereby a discrete disabling injury was inadvertently omitted from the MOA, an employee must file a petition to amend as an original petition for benefits and must do so within the limitations period of § 28–35–57. Therefore, according to the panel, for such a petition to amend to be considered timely (that is, a petition that seeks to include another injured body part within the injury description contained in the original MOA), the petition must be filed within the limitations period for filing an original petition for such benefits under the applicable version of § 28–35–57. The panel noted further that unlike other statutes of limitations, those periods of limitation specified in the WCA have been held to be more akin to statutes of repose because they terminate any right of action after the applicable time period elapses irrespective of whether there has been a discoverable injury as yet. *See Salazar v. Machine Works, Inc.,* 665 A.2d 567, 568 (R.I.1995).

As a result of its ruling in 93–6139, the panel denied and dismissed employee's petition in 95–5024 to enforce compensation payments under the amended MOA, holding that there was no WCC order or decree requiring employer to make any payments of compensation to employee after the decree in 87–9010 terminated compensation payments to employee as of September 6, 1988, nor would a petition requesting such relief have been timely in any event.

Finally, the panel denied and dismissed employee's petition to review in 95–5023 based upon an alleged return of incapacity

because of her neck injury as of September 7, 1988, and continuing (the period after the 87–9010 decree that terminated compensation payments to employee), agreeing with the trial judge in 95–5023 that the doctrine of res judicata operated to bar employee's claim because it was actually litigated between these same parties and finally decided, on its merits, in 89–8002. The panel then upheld the trial judge's determination that as of June 13, 1994 (the date of the trial judge's 93–6139 decree that added the neck injury to the earlier MOA), employee failed to prove by a preponderance of the evidence any recurrence of incapacity because of her neck injury. The trial judge in 95–5023, according to the panel, properly used her discretion when she elected to find that employer's medical experts were more persuasive than employee's medical experts on this issue.

## Standard of Review

This Court's review of an Appellate Division decree is a limited one: we determine whether that tribunal erred in deciding questions of law, *see Wehr, Inc. v. Truex,* 700 A.2d 1085, 1087 (R.I.1997) (per curiam), but, "[i]f legally competent evidence exists in support of the factual findings of the Appellate Division, those findings are binding upon this [C]ourt, and the decree of the Appellate Division must be sustained." *K–Mart v. Whitney,* 710 A.2d 667, 668 (R.I.1998) (quoting *Wehr,* 700 A.2d at 1087–88).

## Analysis

### I

### Limitation Periods and Memoranda of Agreement

The version of § 28–35–5, as amended by P.L.1982, ch. 32, art. I, § 10, that applies to the present case is entitled "Appeals from memorandum of agreements." It states, in relevant part:

"any injured employee * * * who shall have been aggrieved by a memorandum of agreement in that it: * * * (2) fails to set out correctly all the injuries received by the injured employee * * * then upon petition [to the WCC], setting forth all the additional facts, filed by the aggrieved party and served in the same manner as is provided for in chapters 29 to 38 * * * the [WCC] shall hear any and all such petitions and make its decision in accordance with the provisions of said chapters."

Because neither this section nor any of the other provisions in Chapters 29 to 38 of the WCA delineates a limitations period for petitions filed under § 28–35–5, employee argues that her 1993 petition to amend was improperly denied and dismissed by the Appellate Division panel. We agree.

In rejecting employee's argument, the panel reviewed this Court's decisions in *Coletta v. Leviton Manufacturing Co.,* 437 A.2d 1380 (R.I.1981); *Leviton Manufacturing Co. v. Lillibridge,* 120 R.I. 283, 387 A.2d 1034 (1978), and *DeConti v. A.D. Juilliard and Co.,* 85 R.I. 424, 132 A.2d 74 (1957), and determined that those cases required employee to file a petition to amend an MOA within the time period applicable for filing an original petition for benefits. The panel read *DeConti,* for example, to require that petitions alleging an injury distinct from one set forth in the MOA must be filed as an employee's original petition (subject to § 28–35–57's then-existing three-year-limitations period) and that § 28–35–5 was reserved for allegations of incomplete diagnoses.

The version of § 28–35–5 at the time of the *DeConti* case, however, had language dissimilar from the version that applies in the present case. Although this Court in *DeConti* stated that to amend the memorandum without consent of the other party, the petitioner must prove that the injury was not only work-related but also that it was "omitted from the preliminary agreement because of a failure to correctly diagnose her condition," *DeConti,* 85 R.I. at 427, 132 A.2d at 76, this language con-

formed to the former wording of § 28–35–5, which then read, in relevant part,

> "where the agreement * * * *due to failure to correctly diagnose the injury, fails to set out correctly all the injuries received by the injured employee* * * * then upon petition, * * * the director of labor may hear such petitions and file his [or her] written decision * * *." P.L.1949, ch. 2272, § 1. (Emphasis added.)

In contrast, the applicable version of § 28–35–5 in this case does not necessarily require that a petition to amend an MOA be linked to a "failure to correctly diagnose the injury."[6] *Id. Compare* P.L.1982, ch. 32, art. I, § 10 *with* P.L.1949, ch. 2272, art. III, § 1. The panel may have assumed that both versions of § 28–35–5 were identical when it made its decision. Nevertheless, the panel's misplaced reliance upon *De-Conti* and upon its application to the instant case is harmless in light of the other cases it reviewed and applied.

In *Coletta* and *Lillibridge* this Court held that "[w]ithout evidence linking a new injury to one for which the employee originally received compensation," that is, so-called flow-from injuries, § 28–35–45 does not apply. *Coletta,* 437 A.2d at 1383; *see Lillibridge,* 120 R.I. at 292, 387 A.2d at 1039. We noted that, in cases alleging a different original injury from the one for which compensation was paid that do not involve a "flow-from" injury, "the employee's remedy would be an original petition for compensation based on the new injury." *Id.* Thus, if an original injury is different from the one specified in the decree or in the MOA and does not "flow from" the original injury—even though this different injury also arises from the same work-related activity or accident—then § 28–35–45 is inapplicable; rather, the petitioner must file an original petition based upon this different, original injury within the limitations period set forth in the applicable version of § 28–35–57.[7] *Lillibridge,* 120 R.I. at 292, 387 A.2d at 1039. In so holding, the panel considered employee's neck injury as a "new and different" original injury as opposed to a "flow-from" injury.[8] Thus, the panel decided that § 28–35–45 did not apply in this case, because the injury to employee's neck apparently occurred simultaneously with her left-shoulder injury and, hence, was not an

---

**6.** The relevant version of § 28–35–5, as amended by P.L.1982, ch. 32, art. I, § 10 states:

> "any injured employee * * * who shall have been aggrieved by a memorandum of agreement in that it: (1) fails to correctly diagnose the injury; (2) fails to set out correctly all the injuries received by the injured employee; (3) fails to set out all parts of the body affected by such injuries; (4) fails to correctly set the rate of compensation; or (5) in any other way is affected by error; then upon petition [to the WCC], setting forth all the additional facts, filed by the aggrieved party and served in the same manner as is provided for in chapters 29 to 38, inclusive, of this title for all other petitions for review, the [WCC] shall hear any and all such petitions and make its decision in accordance with the provisions of said chapters."

**7.** We note that this case does not involve "latent or undiscovered physical or mental impairment due to injury including disease." Section 28–35–57(b). Nor was this a case in

which "payment of weekly compensation shall have commenced" with respect to any disability attributable to employee's omitted, original injury within the then-applicable three years of the occurrence or manifestation of the injury or incapacity arising therefrom. Section 28–35–57(a). Here, payment of compensation commenced under the MOA solely with respect to employee's shoulder-injury disability.

**8.** As this case illustrates, it is possible for a single work-related accident to result in multiple injuries to an employee that manifest themselves immediately or within a reasonable period after the injury-producing incident. In this case, for example, employee claims to have sprained her left shoulder and injured her neck/cervical area due to a single work-related incident, notwithstanding the fact that the MOA failed to list initially the neck or cervical injuries. However, it is also possible for a single work-related accident to result in a single original injury which, over time, spreads to other areas of the body, thereby causing new and additional injuries. "Flow-from" injuries are of this latter variety.

injury that arose later and "flowed from" the original shoulder injury. In such a case, we have stated that "[b]ecause the preliminary agreement specifically described the injuries for which the employee first received compensation, *the trial commissioner cannot consider a different injury sustained in the same accident on a petition for review under § 28–35–45* " unless the petitioner proves that this later-arising injury is a "flow-from" injury. *Coletta*, 437 A.2d at 1383. (Emphasis added.)

■ We have also stated on numerous occasions that the "primary purpose of the statutory enactments concerning compensation for job-connected injuries was to provide some degree of economic help to an injured worker because of a loss of earnings." *Church v. Doherty*, 107 R.I. 432, 435, 267 A.2d 693, 695 (1970). In an effort to implement this legislative goal, this Court has "repeatedly held that such legislation shall be construed liberally." *Id.* Consistent with a liberal construction of the provisions of the WCA, we hold that § 28–35–5 must be interpreted literally to allow an employee to petition to amend an MOA without any limitations period if the purpose of such a petition is merely to include in the MOA another part of the body that was injured at the same time as the injury or injuries specified therein but was omitted from the MOA for any reason specified in § 28–35–5.[9]

■ Although we construe § 28–35–5 literally and, therefore, apply no specific limitations period to a petition to amend an MOA, the effect of such an amendment on employee's entitlement to compensation for such an omitted original injury depends upon the type and timing of any claim for which an employee petitions for benefits. We hold that once an amendment to the MOA is granted for a reason or reasons set forth in § 28–35–5, an employee may be awarded compensation benefits retroactively based upon that later-included injury only if (1) the claim or

issue is not precluded because of res judicata or collateral estoppel as those doctrines are applied in workers' compensation cases, (2) the employee proves by a fair preponderance of the credible evidence that he or she is incapacitated based upon an injury described in the amended MOA as of a specific date, and (3) the retroactive compensation claim is filed within the limitations period set forth in the applicable version of § 28–35–57.

■ Because there is no provision within the WCA limiting the number of petitions alleging a recurrence of incapacity, if an employee proves by a fair preponderance of the credible evidence that a recurrence of incapacity has occurred because of an injury included within an amended MOA and files such a petition within the ten-year period specified in § 28–35–45, he or she will be entitled to ongoing compensation benefits only from and including the date of the alleged recurrence. However, the employee must petition the court within the limitations period set forth in the applicable version of § 28–35–57 (or § 28–35–45, if the different injury is a "flow-from" injury) for the employee to receive any additional compensation benefits that are retroactive to the date of the original MOA or to any date thereafter, if the MOA is still in effect. Thus, when an employee alleges, as here, that an MOA should be amended to include an additional original injury, then the employee must do so within the limitations period set forth in the applicable version of § 28–35–57 to obtain any additional benefits that may be due from such a disabling injury retroactive to the date of the MOA (or to some later date, if the MOA is still in effect). Otherwise, benefits with respect to the additional original injury are payable, if at all, only from the date of a proven recurrence of the employee's disability after the MOA has been amended to include that omitted injury.

---

9. Thus, we do not construe § 28–35–5 to contain, by analogy, a ten-year-limitations period, similar to the one in § 28–35–45, as the trial judge ruled in WCC 93–6139.

In petition 95–5023, employee alleged a recurrence of disability as of either September 7, 1988, and continuing, or June 13, 1994, and continuing. If employee had been able to prove by a fair preponderance of the credible evidence in 95–5023 that she had suffered a recurrence of her neck or shoulder injury as of June 13, 1994, then she would have been entitled to compensation benefits from that date forward. The trial judge there, however, did not find that such a recurrence existed as of that date.

■ We note that "the purpose of requiring * * * claims to be brought within a specific time limit is 'to protect the employer from stale claims too old to be successfully or adequately investigated and properly defended,'" *Ochoa v. Union Camp Corp.*, 120 R.I. 898, 904, 391 A.2d 123, 127 (1978) (quoting 12 Schneider, *Workmen's Compensation* § 2355 at 4 (3d ed.1959)), and that this objective would be frustrated if employees were allowed to petition for compensation under an amended MOA and to obtain retroactive benefits for a disability arising from such injuries without any reasonable limitations period applying to such petitions.

■ We find further support for this conclusion in the language of § 28–35–5 itself, as amended by P.L.1982, ch. 32, art. I, § 10, which provides,

> "then upon petition [to the WCC], setting forth all the additional facts, filed by the aggrieved party and served in the same manner as is provided for in chapters 29 to 38 * * * the [WCC] shall hear any and all such petitions and make its decision *in accordance with the provisions of said chapters*." (Emphasis added.)

Because § 28–35–57 is included within "the provisions of said chapters," we construe § 28–35–5 to require an employee, who

seeks not only to amend an MOA to include another and different original injury from the one specified in the MOA (albeit the injury arose out of the same work-related incident) but also to obtain additional compensation for such an injury retroactive to the date of the original MOA (or to some later date, if the MOA is still in effect), to file such a petition for benefits within the limitations period set forth in the applicable version of § 28–35–57. Such a petition is analogous to the filing of an additional "claim"—one that would require the filing of an additional *original* petition within the relevant limitations period of § 28–35–57.[10]

## II

### Employee's Petition to Review Alleging a Return of Incapacity and Resultant Employer Liability

We reject employee's contention that employer violated a WCC order to pay compensation to employee after the trial judge in 93–6139 ordered the MOA to be amended. The decree in 87–9010 did not order payment of any benefits; on the contrary, it terminated them as of September 6, 1988. Moreover, the trial judge's order in 93–6139 amending the MOA was not an order requiring employer to pay compensation to employee. Thus, there was no order or decree requiring employer to make any payments of compensation to employee.

■ Finally, employee failed to show any failure on employer's part to provide payment of any weekly benefits due her. Failure to present evidence of an essential aspect of a petition requires entry of a decree denying and dismissing the petition. *See Faria v. Carol Cable*, 527 A.2d 641 (R.I.1987). Here, employee presented no evidence pertaining to this issue, and therefore the trial judge properly dismissed this aspect of her petition.

---

**10.** Nonetheless, we also hold that the trial judge in 93–6139 did not err in amending the 1986 MOA for the sole purpose of clarifying the record in this case to indicate that the original MOA should have covered both employee's left shoulder and neck/cervical injuries.

In 95–5023, we conclude that the trial judge and the panel were both correct in applying the doctrine of res judicata to employee's petition alleging a recurrence of incapacity because of her neck injury as of September 7, 1988, and continuing. We recently reaffirmed that the doctrine of res judicata "should have limited application when the subject matter of the litigation is a petition to review decrees or agreements in workers' compensation cases." *Lavoie v. Victor Electric,* 732 A.2d 52, 54 (R.I. 1999). In *Lavoie,* we stated,

"In order for the doctrine to be applicable, there must be an identity of issues, the prior proceeding must have resulted in a final judgment, and the parties must be the same parties or in privity with the parties in the original proceeding. * * * 'It is our opinion that in enacting [the WCA] the legislature intended to give both an employer and an employee a comprehensive right to litigate from time to time, on a petition to review or one based on a new injury, questions involving an increase or decrease in the incapacity of the employee after an approved agreement or a decree has been entered. In our judgment it would do violence to the legislative intent to apply the doctrine of res adjudicata so as to preclude an employer or an employee from having an *actual adjudication* of the issue of alleged increased or decreased incapacity which may have inhered in the physical injury described in the agreement, although it had not become incapacitating at the time of the prior proceeding and decision.'" *Id.* (quoting *Di Vona v. Haverhill Shoe Novelty Co.,* 85 R.I. 122, 126, 127 A.2d 503, 505 (1956)). (Emphasis added.)

Moreover, in *Di Vona* we held that res judicata will be applied in workers' compensation cases only with respect to such issues as were *actually* raised and decided in the prior action. *Di Vona,* 85 R.I. at 126, 127 A.2d at 506. "The question then becomes one of fact: Was the questioned issue of fact raised and decided in the prior case? If it was, it is barred by the doctrine. If it was not so raised and decided, it may properly be heard in the subsequent proceeding in accordance with the act." *Id.*

The trial judge in 95–5023 ruled that the alleged recurrence of incapacity beginning as of September 7, 1988, and continuing—

"must be denied in light of the decision in W.C.C. No. 89–8002. In that case, the employee alleged a return of incapacity beginning around October of 1988. The petition was denied in a decree entered on February 28, 1990. That issue is therefore res judicata, *particularly since the decision reflects that the medical evidence reviewed by the trial judge in that matter discussed primarily her neck complaints.* The judge evaluated that medical evidence on its merits. His decision was not based upon the ground that the memorandum of agreement did not include a neck injury." (Emphasis added.)

It is clear, then, that the trial judge determined, and the Appellate Division affirmed, that the parties in 89–8002 had in fact actually litigated and the trial judge finally decided that the injury to her neck, while not included in the 1986 MOA, had not recurred as of October 1988, and continuing, until the 1990 ruling in that case. We affirm these determinations because the record contains factual support for these rulings.

 Finally, regarding employee's petition to review in 95–5023 alleging a return of incapacity because of her neck injury as of June 13, 1994, and continuing, the WCC trial judges in 87–9010, 89–8002 and 95–5023 properly found that employee failed to demonstrate a return of incapacity as a result of her work-related injuries for each of the time periods covered by those decrees. When WCC trial judges are presented with conflicting medical opinions, they are entitled to elect one expert opinion over the other, in whole or in part. *See Parenteau v. Zimmerman Engineering, Inc.,* 111 R.I. 68, 299 A.2d

168 (1973). As long as the medical opinion relied upon is competent, the trial judge's choice should not be disturbed. *Id.* at 78, 299 A.2d at 174. The panel stated in its decision that the trial judge in 95–5023 reviewed the record extensively and noted in particular that the opinions of the employee's treating physician on the issue of incapacity had remained unchanged since 1988 but had twice been rejected by prior trial judges. The panel noted further that in 95–5023 the employer's medical expert concluded that employee was not disabled by any work-related injury. Ample evidence was presented by both sides. Each of the WCC's trial judges, however, chose to believe the employer's medical expert and found that the employee's work-related injuries to her neck and left shoulder no longer were disabling. The employer's medical expert concluded that the employee's injuries were consistent with her preexisting arthritis and her disability was, thus, unrelated to her work-related injuries. In our opinion, the panel in 95–5023 was not clearly wrong in upholding the trial judge's finding that the employer's medical expert was more credible than the employee's medical expert. Thus, the panel properly declined to find that the trial judge's decision was clearly erroneous.

## Conclusion

For the reasons stated, the employee's petition for certiorari is granted in part (with respect to 93–6139), but it is denied in all other respects and the writ previously issued is quashed for all such other matters. As a result, we affirm the final decree of the Appellate Division, except that portion concerning 93–6139. In that matter, the 1986 MOA shall be amended to include the employee's neck/cervical injury. The papers in the case shall be remanded to the Workers' Compensation Court with our decision endorsed thereon.